Chief Justice Robertson and Judge Ewing
composing the Court for the trial of-this case, the former delivered the following Opinion.
Upon a bill filed, in 1820, by Humphrey Marshall and Anna Maria Marshall, his wife, claiming, against the appellants—whose possession under the elder grant had been continued ever since the year 1795—the superior equitable title to part of a tract of land entered by her brother, John Marshall, and granted to his and her father, Thomas Marshall, and to a portion of which she asserted title under a deed purporting to have been executed by the said Thomas, in 1794, after her intermarriage with the said Humphrey., and conveying his title to herself and her sister McClung and brother A. K. Marshall, as tenants in common, and also, under a deed of partition, by her said co-tenants, in the spring of 1820, releasing to her their interests in the land for which the bill was *413 filed—the Circuit Court—being of the opinion, that the equity of A. K. Marshall and Mrs. Me Clung had been barred by lapse of time, before they released to their co-tenant, in 1820, but that the continuing coverture of the latter had still saved her right to one undivided third part — decreed that the appellants should relinquish to the appellees, John J. Marshall and Thomas A. Marshal—in whose names the suit had been revived, on the death of their mother, the said Anna Maria—the legal title to one third of the tract embraced in the said deed of partition. And the appellants now urge against that decree, the following objections:—
Objections urged here against the decree in favor of compl’ts.
An entry—the objects called for being notorious when it was made, so that the beginning corner could easily be found by a vigilant enquirer, with the entry before him—held to be good, at least, so far as to include the land in contest; and being certainly good so far, it is not necessary to decide whether it is good for the residue.
Bill by husband and wife, for her land; she dies, and the suit is revived by her heirs, who obtain a decree: as their father was a party, and did not object—the decree binds him, and his rights need not he investigated.
*413 First—That John Marshall's entry was vague and insufficient; second—that Humphrey Marshall, who was surviving at the date of the decree, was entitled, as tenant by the courtesy, and that, therefore, the appellees then had no available right; third—that the right to sue for even the one third, for which the decree was rendered, had also been barred by their adverse occupancy for more than twenty years.
These being the only points embraced in the assignment of errors, we will briefly consider them, and no others, in the order in which they have been stated.
First. The entry calls to begin at the point where “ the road leading from the mouth of Cabbin creek to the upper “ salt lick, crosses the dividing ridge between the waters of “ Cabbin creek and the north fork of Licking creek;” and, it appearing from the proof, that, at the date of the entry, Cabbin creek, the road, the dividing ridge, the upper salt lick, and the north fork of Licking creek, were notorious, and that the point of beginning could easily and certainly have been found, and identified, by any vigilant inquirer, with the entry before him—the entry must be deemed valid and certain, so far at least as to have shown certainly, that it must have included the land now in controversy; and therefore, it is not material to the present parties, whether, as argued, it be deemed uncertain, and therefore invalid, as to other land, not now in litigation.
Second. Humphrey Marshall, being a party, and not objecting to the decree as rendered, will be concluded *414 by it; and therefore, it is not, as between him and his sons, material to inquire whether he might have been entitled to an interest during his life, in the land decreed to his sons, as the heirs of his wife. And the decision about to be made, on the next point will render it unnecessary to decide whether he had any available right, as tenant by the courtesy, upon his wife’s death; and whether, if he had not, in consequence of the lapse of time, any such right against the plaintiffs in error, they would be entitled to enjoy the possession during his life.
Where a right to land accrued to a woman during coverture, and before there had been an adverse occupancy, the statute of limitations of 1796 did not commence running against her, till ten years after the coverture ceased; and if her interest was a tenancy in common with others, her right of action would he saved to her, while theirs might be barred. But if she were a joint tenant, or if the adverse possession commenced before her title, the statute, having commenced running, would not be suspended by her coverture, when her right accrued by purchase, or otherwise than by descent, as it might if she took by descent.
By the act of 1814, all savings in the 3d sec. of the general statute of limitations of 1796, in favor of femes coverts are repealed and abolished—except that, by the act of’ 14, sec 2, femes coverts, to whom lands shall have descended, or have been devised by will, (“and in no other case,”) shall be allowed three years, after they become discovert, to commence their actions, real or mixed, for such lands—consequently, in no case where the right to land accrued to a feme by contract or conveyance, during her coverture, and in no case where the title, however acquired, accrued to her when the coverture did not exist, is there any saving in her favor And the same lapse of time which bars an action at law, will, by analogy, bar a bill in eq.
*414 Third. If Mrs. Marshall's right, as claimed, “accrued” to her during her coverture, and before there had been any adverse occupancy, there can be no doubt that the general statute of limitations, of 1796, understood and applied according to the letter and established construction of it, never commenced running against her several interest, as a tenant in common; and that, of course, the running of the statute against her co-tenants, did not affect her right to sue for her several and undivided third part. Demarest vs. Wynkoop, 3 John. Chy. Rep. 129; Neal vs. Robertson, 2 Dana’s Rep. 86; and Kendall vs. Slaughter, 1 Marsh. Rep. 377. But had she been a joint tenant, instead of a tenant in common, or had she acquired her title after, instead of before, the commencement of the adverse possession, the statute, having commenced running, would not have been suspended by her coverture, when her right accrued to her by purchase, as it might have been, had her interest been cast on her by descent. May's Heirs vs. Slaughter, 3 Marsh. Rep. 508; Macher vs. May, 4 Bibb’s Rep. 43.
But the 2d sec. of an act of 1814 (Stat. Law, 1145,) declares, “that femes coverts, upon whom lands shall have descended, “ or to whom lands shall have been devised by will, “ during coverture, (and in no other case,) shall be allowed “ the space of three years only, after they become discovert, “ to commence their actions, real or mixed, for “ any such lands of this commonwealth, instead of the “ ten years allowed by the third section” of the general statute of limitations of 1796; and, in our judgment, this provision operates as a repeal of any saving in the said third section of the act of 1796, in consequence of co *415 verture, whenever the title shall have accrued to a feme covert, by contract or deed, and not by descent or will. It must, we think, be construed as intending, that three years after discoverture shall be substituted for the ten years allowed by the act of 1796, and that even this curtailed indulgence to persons who had labored under the disability of coverture, should be allowed only in cases in which the right had accrued during coverture, and had been derived by descent or will. By the pre-existing law, subsequent coverture did not suspend the running of the statutory limitation against a cause of action which had accrued prior to the marriage; and hence the parenthetical words “ (and in no other case) ” could not have been used in exclusive reference to the immediate antecedent, “ during coverture:" for, in that sense, they were unnecessary and idle ; but they must be understood as intended to restrict the saving to the enumerated cases of title acquired by femes coverts by descent or by devise, during coverture, and as excluding, of course, cases in which the right of a married woman was acquired by contract and conveyance, even during her coverture, and all cases, also, in which the title, in whatever mode acquired, shall have accrued when the disability of coverture did not exist.
This is, to our minds, the import and effect of so much of the second section of the statute of 1814 as we have quoted; and that interpretation is fortified by the following considerations: first—that there was no other conceivable motive for particularizing the two modes of acquisition by descent and by devise; second—that, had the Legislature intended, so far as coverture was concerned, to make no other change in the saving, in that particular, of the act of 1796, than by substituting three instead of ten years, a simple announcement to that effect would have been much more appropriate than the phraseology of the section as adopted; and, third—that, if our construction be incorrect, the Legislature must be subjected to the imputation of either misusing the words “devised by will,” in the comprehensive sense of transmitting title, not by devise only, but by all other modes than descent, or of intending the absurd anomaly of a *416 saving for only three years in cases of descent and devise, and of a saving for ten years in cases in which femes coverts had, by their own voluntary acts, acquired the right.
A difference noticed between the saving in favor of femes coverts in the acts of ’96 and ’14, which may produce important results.
Were it admitted that there was no rational or consistent motive for excluding cases in which title had been conferred by deed or contract, that circumstance alone would not authorize this Court to enlarge or restrict the clear import of the express and explicit words employed by the Legislative department. As all statutes of limitations are arbitrary, all the express exceptions, from the operation of them, are equally so; and if the Legislature determine that coverture shall not, in certain cases, or in any case, prevent or suspend the running of the statute, the only province of this Court will be to observe the Legislative will.
But there may have been some peculiar reasons for restricting the saving, as we suppose the second section of the act of 1814 has done; and that is, first—the possibility of conveyances to married women for the purpose of evading the policy of the statute of 1814, and especially by non-resident claimants of land; and which purpose should not be imputed to those who die without disposing of their titles, or who transmit them by last will, when they have no longer any capacity or hope of enjoying the personal benefit of them; and, second—the belief that when, by contract, a married woman acquires title to land, her husband is privy to the purchase, and therefore, being competent to guard the right, should be required to do so.
There may be another radical difference between the saving in the statute of 1796, and that of the second section of the act of 1814, in this: the first may apply to coverture when the cause of action accrues; the last literally applies only to the time of acquiring the title by a married woman. And if this difference exist—concerning which we will now express no judicial opinion—important results would practically follow.
But, however incongruous the literal provisions of the second section of the act of 1814 may be deemed to be, this Court must give them all effect, so far as they may be consistent with each other. And the express leaving *417 out of coverture, in cases of titles acquired by contract, or in any other mode than by descent or devise, is no more than had been constructively done by the general statute of limitations of 1796, in all cases in which, after the limitation had commenced running, the title of the person out of possession had accrued to a married woman otherwise than by descent; for our predecessors, as already suggested, decided, in the case of May's Heirs vs. Slaughter, supra, that, though a limitation, once commenced, would be suspended by the coverture or infancy of the person upon whom the title had been subsequently cast by descent, it would not be suspended by any such intervening disability, if the title had been transferred by contract or purchase; because, if it should be, non-resident and other claimants of land, adversely occupied by others, might, by colorable transfers to femes coverts or infants, evade the end and frustrate the policy of the statute of limitations.
As the compt’s claim under a deed only, this court does not consider any title which they might have asserted under a will.—In the absence of proof as to the time when a deed was actually delivered, it is presumed to have been delivered at its date.
And, though that decision was given since 1814, the Legislature, probably entertaining the same opinion, expressly enacted it as law, in the second section of the statute of that year, so far as coverture might be concerned—excepting, however, cases of devise, as well as, descent, for reasons similar to those given by this Court as to descents.
Why the like provision was not made in cases of infancy, as well as in those of coverture, by the act of 1814, it is not our province to determine. But, even if there be no apparent reason for the distinction, the express provisions in regard to coverture cannot, merely on that ground, be overruled or disregarded. Nor is it material to us, whether the Legislature acted either wisely or understandingly. Having power to act, and their act being express and intelligible, ita lex scripta est should be the judgment of this Court.
We feel bound to consider Mrs. Marshall’s title as one conveyed to her by deed whilst she was covert, and prior to any adverse possession: first—because the *418 appellees assert claim under that conveyance alone; and, second—because, though there is no express proof of the delivery of the deed, at the time of its date, the delivery of it at that time should be presumed, nothing appearing to the contrary, and especially as the grantor’s will afterwards refers to and recognizes it as a subsisting document of title, operating from the date. And even if her claim could be derived from the will only, it would probably be unavailing; because, between the date of the conveyance to herself and co-tenants, by her father, and the time of his death, when his will took effect, he had conveyed the same land to other persons, who might, therefore, hold a better right than she ever did, if her only title was derived from the will, which did not pass to her an interest which the testator had thus previously parted with. And this circumstance also fortifies the conclusion—otherwise so strong—that her claim accrued to her from the conveyance of 1794, and contemporaneously with its date.
The 2d sec. of the limitation act of 1814, considered applicable to a suit in chancery, under the circumstances of the case.
Wherefore—believing, as we do, that this case is of that class in which the title, though acquired during coverture, was derived from contract, and not by either descent or devise; and, also, that the second section of the act of 1814 virtually abolished the saving in favor of coverture in such cases; and considering that enactment as applicable by analogy, (1.) because, as, at its date, there had not been an adverse possession for twenty years, it was not, as to this case, retroactive; and (2.) because the record exhibits no fact which, according to the established rule of equity in analagous cases, should prevent the application of the statutory period, as effectually as it would operate against a legal right and a legal remedy—we are of the opinion that, when this suit was brought, the right to the relief sought by it should be deemed to have been lost by lapse of time.
And, therefore, it is decreed that the decree of the Circuit Court be reversed, and the cause remanded, with instructions to dismiss the bill.