Riggs, &c.
vs.
Dooley, &c.

---

EJECTMENT.

Case 61.

# Riggs, &c. *vs* Dooley, &c.

## Appeal from the Montgomery Circuit.

*Descent. Devises. Limitations. Femes Covert. Joint rights and joint and special Devises. Adverse possession.*

November 2.

Judge Breck delivered the opinion of the Court.

Case stated.

This was an ejectment for two hundred and ninety five acres of land, lying in the county of Montgomery, in which a verdict and judgment having been rendered against the plaintiffs, they have brought the case to this Court.

The material facts in the case, in regard to which there is no contrariety in the testimony, are the following:

In 1814, the heirs of John Hardy, viz: Ashford and Henry Hardy, Greenberry Riggs and Ann his wife, Hazle Williams and Mary his wife, and C. T. Hempston and Dorcas his wife, the three *femes* being the daughters of said John Hardy, recovered a judgment in ejectment for two hundred and ninety five acres of land, the tract now in controversy, for which a grant had issued to their ancestor, in 1786, against William Farrow, Sr. and William Farrow, Jr. The value of the improvements having been assessed under the occupying claimant law, a bond was executed therefor by Riggs, and a part of the other heirs, and thereupon a *habere facias possessionem* issued, and Riggs, who had managed the suit, was put in possession, and for himself and co-heirs continued in possession about one year.

The bond for the improvements not having been discharged, an arrangement was then made between Riggs, for himself, and Ashford and Henry Hardy, and William Farrow, Jr., by which it was agreed that the bond was to be set aside, and a judgment to be entered for the improvements, in favor of the defendants in the ejectment. Riggs and the two Hardys were to convey to Farrow their interest in the land, and the judgment to be credited for their proportion thereof, and an execution to issue, and the interest of the other two heirs, Williams and wife, and Hempston and wife, to be sold for the residue. The sale was made accordingly, and Farrow became the purchaser, and in 1817, obtained the Sheriff's deed. He at that time or before, also obtained the possession, and under his purchase from Riggs and the two Hardys, and the Sheriff's deed, claimed and held the land as his own, and he and those claiming under him, continued so to claim and hold it till 1842, when this action of ejectment was instituted, upon the joint and several demise of John R. Riggs, Mary Williams and Dorcas Hempston.

It further appeared, that John Hardy died in the State of Maryland, in 1788, and that at the time of his death, his daughter Mary Williams was the wife of Hazle Williams, and his daughter Dorcas was single, and did

Riggs, &c.
vs
Dooley, &c.

not marry till 1792, when she was twenty three years of age, and married Hempston. That Mrs. Williams became discovert some eight or ten years before the institution of this suit, and Mrs. Hempston about one year, neither of whom had ever resided in Kentucky. It also appeared, that besides the five children and heirs before named, John Hardy at his death left a sixth child, his oldest son, John Hardy, Jr., who died in 1793 or 1794, leaving no children, and, so far as appears, intestate.

The Court permitted the Sheriff's deed to be read to the jury, but excluded the execution under which the sale purports to have been made.

Upon this state of fact, the plaintiff moved the Court to instruct the jury, "that if they believed from the evidence, that Mrs. Williams or Mrs. Hempston, or either of them, were *femes covert* at the time their *cause of action accrued*, and so remained, or either of them, up to and within three years before the bringing this suit, the law was for them, or such of them as were such *femes covert*, and so remained up to and within three years before the bringing this suit."

<span class="margin-note">Instructions asked by plaintiffs below and refused by the Circuit Court.</span>

This instruction the Court refused, but gave, on motion of the defendants, the following:

"That if the jury should believe, from the evidence, that Mrs. Williams or Mrs. Hempston, or either of them, were not *femes covert* at the time their title descended or came to them, the law was for the defendants."

<span class="margin-note">Instruction given for defendants below.</span>

There being no controversy as to the facts of the case, the only question is, whether the Court below correctly expounded the law.

Whether the execution under which Farrow purchased the two fifths of the land, was properly rejected as evidence, we need not enquire. If an error, it was not to the prejudice of the plaintiffs. In regard to the Sheriff's deed, the Court was right in permitting it to go to the jury.

In order to entitle the defendants to read and rely upon the deed, for the purpose of deriving title under it, it would have been necessary to have shown a judgment, upon which an execution was authorized to be issued, and also the execution. But the deed alone, without producing

<span class="margin-note">To make out *title* by a Sheriff's deed, it is necessary to show the judgment and execution under</span>

a judgment or execution, was competent for the purpose of showing how Farrow had held, and the character of his possession. Although the deed, therefore, passed no title, yet as Farrow held and claimed under it, his possession was thereby rendered adverse to the parties whose interest it purported to convey. It is insisted, under the circumstances of this case, that Farrow's possession would not be adverse, or rather, that the statute would not commence running till the parties had notice of the manner of his claiming and holding.

It is true that Farrow obtained possession in virtue of his purchase from Riggs and the two Hardys, and that the joint tenancy, or co-parcenary between Hardy's heirs, was thereby broken up, and Farrow became a tenant in common with the other two heirs. While he so held, the statute would not commence running, because the possession was not adverse. But as soon as he set up claim in his own right to the whole tract, and claimed to hold against all the heirs, whether with or without the Sheriff's deed, his possession was adverse, and the statute commenced running against the two heirs, who had been tenants in common with him, as soon as they had notice of the adversary holding. After a lapse of twenty years continued assertion of right, adverse holding, according to the principle settled by this Court, in *Farrow's heirs* vs *Edmondson*, &c., (4 B. Monroe, 605,) notice from the commencement of the adverse holding might be presumed. In this case the acts by which Farrow claimed to hold in his own right and against the title of Williams and wife and Hempston and wife, were purchasing their interest at a public sale, (for apart from the execution, there is evidence of such sale,) obtaining and duly recording the Sheriff's deed purporting to convey their title, and openly and publicly claiming and holding the land as his own. After an undisturbed holding in this way for twenty five years, it seems to us it is too late for the heirs, or any of them, to call for proof of actual notice.

Besides it has been expressly held that where one tenant in common has been in undisturbed possession for twenty years, in an ejectment brought against him by the co-tenant, the jury will be directed to presume an ac-

which the sale and deed were made, but is not necessary to show the character of a possession held under the deed.

The possession of a purchase from one joint tenant or parcener, though held by deed, is not adverse to the other joint owners, until it is distinctly claimed to be for the whole and adverse, and notice received by those jointly interested, when after a lapse of 20 years the right of entry would be barred. (4 B. Monroe, 605.)

If one tenant in common be in the undisturbed possession of land for twenty years, claiming

RIGGS, &c.
*vs*
DOOLEY, &c.

the whole, and the ejectment bro't, the jury will be directed to presume an ouster, (*Cowp.* 217,) unless the savings in the statute be available.

The savings in the statute of 1796, were repealed by the act of 1814, (2 *Stat. Laws,* 1144,) which reduced the time in which *femes covert* might sue, from 10 to 3 years, and restricted the class of cases on which she might sue, to cases where lands had *descended* or been *devised* to *femes covert during coverture.* (5 *Dana,* 412; 1 *Marshall,* 377.)

tual ouster, and consequently to find for the defendant: (*Cowp.* 217.) Notice, therefore, of the adversary holding from the commencement of this case, should be presumed, and under the *bar,* complete, unless as contended, the rights of the parties are protected by the *savings* in favor of *femes covert,* in our statutes.

The instruction moved by the plaintiff, is based upon the supposition that when the *cause of action* accrues to a *feme covert* during coverture, her right of action is not barred till three years after she becomes discovert. If the saving in the general statute of limitations of 1796, were still in force, as to *femes covert,* the instruction would probably be embraced by it. But the saving in that act was repealed by the act of 1814, (2 *Stat. Laws,* 1144,) which not only reduced the time in which *femes covert,* under the former act, were allowed to sue after they became discovert, from ten to three years, but also restricted the saving to cases where lands had descended or had been devised to *femes covert* during coverture. The act provides that in these two classes of cases, ("and in no other case,") *femes covert* shall be allowed three years only, after they become discovert, to commence their actions, &c. Such was the construction, as we understand the decision, and in which we concur, given by this Court to the act of 1814, in *Masterson's heirs* vs *Marshall's heirs,* (5 *Dana,* 412.) And upon this construction it follows, that the instruction as moved by the plaintiff, was properly refused. It also results from the uncontroverted facts in the case, that the plaintiff was not entitled to recover upon the title which descended to Mrs. Williams and Mrs. Hempston, from their father. No title whatever was shown in the lessor, Riggs. Upon the demise of Mrs. Williams, there could be no recovery, as she had been discovert more than three years. Nor could there be any recovery upon the demise of Mrs. Hempston, as no title descended to her during coverture. In the latter case the question was settled by this Court in *Kendall* vs *Slaughter,* (1 *Marshall,* 377.)

Where the right descending is a joint right, all

The instruction which the Court gave the jury, was in effect, that unless Mrs. Williams and Mrs. Hempston both labored under the disability of coverture when the

title descended to them, the law was for the defendants. The law is certainly well settled, that where the right is joint, all must be under disability, to stop the running of the statute. But that rule will not, in all cases, apply to the time when the title descended or vested. There might, at that time, be no adverse possession, and until that was the case, the statute of course would not commence running. The rule must, therefore, apply to the condition of the parties at the time the cause of action accrued. If at that time, the right being joint, a part only were under disability, the statute would run against all and bar all, the same as if all had been free from disability. But even if all were then under disability, still if the disability were coverture, whether it would be available or not, would depend upon whether it existed at the time the title descended or had been devised; for, as we have seen, it is only in that state of case, that the rights of *femes covert*, under the statute of 1814, *supra*, would be protected at all. The instruction, therefore, is not, abstractly considered, correct, nor is it so as applicable to the facts of this case. But we should not have felt authorized to disturb the judgment for the error in regard to it, if the plaintiff had manifested no right to recover except under the title derived by descent by Mrs. Williams and Mrs. Hempston from their father, for as the record now stands upon that title, apart from the instruction, there could legally have been no recovery. But such we apprehend, was not the case in reference to the title which descended to them from their brother; at his death Mrs. Hempston, as well as Mrs. Williams, was a *feme covert*. They were also both *femes covert* in 1817, when their cause of action accrued against Farrow. At that time the estate in co-parcenary, as to the inheritance from the brother, had been dissolved by the previous sale and transfer of the other three parceners to Farrow, which converted the estate into a tenancy in common. Upon the dissolution of the co-parcenary, Mrs. Williams and Mrs. Hempston became tenants in common with Farrow. Technically, as to each other, they may still have continued co-parceners. But whether so or not, is in no view of the case, deemed important. Both were under the same disability

RIGGS, &c.
*vs*
DOOLEY, &c.

must be under disability to have the benefit of the savings in the statute, if there be then a right of action, or an adverse holding.

Heirs may demise severally. (1 *Marshall*, 70; 3 *J. J. Mar.* 98.)

and they had no co-tenant free from disability. Whether regarded, in reference to their right of action, as tenants in common or as co-parceners, they could undoubtedly sue in severalty: *Scott* vs *Beall*, (1 *Marshall*, 70; 3 *J. J. Marshall*, 98.) As tenants in common they could only sue in that way; and in that view of the case the right of the one would not be affected by the condition of the other, whether under disability or not. Nor would the bar of the one have the effect to bar the other: *Dickey vs Armstrong's devisees*, (1 *Marshall*, 38.) In this light we are disposed to regard them, and hence it would follow, that although Mrs. Williams might be barred, not having sued within three years after she became discovert, Mrs. Hempston would not be.

When all to whom title descends are under disability, all are protected until all the disabilities are removed. (3 *Monroe*, 147.)

But considering them as co-parceners, and both under disability, they could sue jointly, and the question would arise whether either would be barred till three years after both became discovert. In *Clay's heirs* vs *Miller*, (3 *Monroe*, 147,) all were infants when the right accrued, and it was held that they were allowed three years to bring their action, after the whole of them had arrived at the age of twenty one. But that case differed from this in an important particular. In that case the infants constituted one heir, and as such were entitled to the entire estate, but not so here. But even if the same principles were applicable to this case, it would seem that to render it available, the parties must sue jointly. It must be presumed that in the case cited, the lessors still occupied the attitude of a single heir, and as such asserted a joint right. In this case the lessors demise jointly and severally, but as no title is shown in the lessor, Riggs, there could be no recovery, as is well settled, upon the joint demise. Upon the several demise of Mrs. Williams, she could not recover, having been more than three years discovert. Upon such a decision, she could derive no aid from her co-tenant. But the bar of Mrs. Williams could, we think, in no view of the case, affect Mrs. Hempston, who is clearly within the saving of the statute, whether regarded as tenant in common or as a co-parcener.

—Where there is a joint and several demise,

Upon the whole then, we come to the conclusion that upon the facts now appearing in the record, the plaintiff,

upon the demise of Hempston, manifested a right of recovery to the extent of one fifth of one sixth, or of one thirtieth of the land in controversy. What effect the grant to Sebree should have as to so much of the land embraced by it, we need not enquire.

It follows also, from the view we have taken, that in regard to the first trial, the verdict was properly set aside, and a new trial granted; but in regard to the last trial, that the Court mis-directed the jury as to the law of the case, and to the prejudice of the plaintiff.

The judgment is, therefore, reversed, and the cause remanded, that a new trial may be granted without the payment of costs, and the plaintiff is entitled to his costs in this Court.

*Apperson and Hazlerigg* for appellants; *Hanson and French* for appellees.

and no joint right is proved, no recovery can be had upon the joint demise, but upon the separate demise so far as title is shown in the lessors.