CASE 50—ACTION BY E. J. WARE AGAINST BILLIE ROSE ON A NOTE, INVOLVING A LAND SALE IN WHICH OTHERS ARE MADE PARTIES. —APRIL 30.

# Rose and Others v. Ware.

APPEAL FROM TODD CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. AFFIRMED.

VENDOR AND PURCHASER—CONDITIONAL SALE—BURDEN OF PROOF— SALE BY HUSBAND—ADVERSE POSSESSION—LIMITATIONS—TENANTS IN COMMON—OUSTER.

Held: 1. One who gives a note and receives a deed has the burden, when sued on the note, of showing, by a preponderance of the evidence, that the sale was not absolute, but on a condition which had not been fulfilled.

2. Where the husband alone sells land in which his wife has an interest, the possession of the vendee is adverse to her, and with it commences to run against her the thirty-years' statute of limitations.

3. The running of the thirty years' statute of limitations is not prevented by any disability if, but for the disability, a right of action would have existed.

4. One who enters under a bond for title for all the land from one of the tenants in common, paying the full value of the land, then sells part of it, without recognizing his co-tenant or accounting to her, and has open and notorious possession of the remainder, claiming to be the exclusive owner, ousts his co-tenant, so that the thirty years' statute of limitations begins to run.

W. P. SANDIDGE AND W. L. REEVES, FOR APPELLANT, BILLIE ROSE.

POINTS DISCUSSED HEREIN AND AUTHORITIES CITED IN SUPPORT OF EACH CONTENTION.

1. Mrs. Rose did not accept the deed of appellee conveying said land to her. If she did, the acceptance of said deed and the execution of said note was procured by fraud.

2. The minds of the parties did not meet. Smith v. Cansler, 83 Ky., 368; 53 Am. St. Rep., 352; 11 Ky. Law Rep., 325; Bunnell v. Bunnell, 23 Ky. Law Rep., 805.

3. Appellee had no title to one-fourth of the land, and if he had any title to the other three-fourths thereof it was defective.

Rose and Others v. Ware.

4. The statutes of limitation did not bar the right of the heirs of Mrs. Parmelia M. Winston from recovering their interest in the said land.

(a) The husband's grant, made November 25, 1858, was effectual for three years, that being the extent that he had power to convey. 8 Ky. Law Rep., 128; 1 B. M., 93; Kentucky Statutes, sec. 2351; 10 Bush, 262.

(b) The statute was suspended from November 25, 1861, to the end of the war, and Mrs. Winston died on January 10, 1865. 4 Ky. Law Rep., 732; Perkins v. Page, 9 Am. Reps., 639; 6 Amer. Reps., 270; 12 Wall., 700; 11 Bush, 341; 7 Wall., 452; 15 Wall., 395; 11 Wall., 266; Crutcher v. Hoard and Wife, 4 Bush, 360; 8 Bush, 410.

(c) Dr. Thomas L. Winston, upon the death of Mrs. Winston, became tenant by the curtesy, and lived till 1895. Carr. v. Givens, 9 Bush, 679; Yankee v. Sweeney, 85 Ky., 92; Ellis v. Ditty, 15 Ky. Law Rep., 378; Murray v. Fishback, 5 B. M., 403; Butler v. McMillan, 88 Ky., 414; Vanarsdall v. Fauntleroy's Heirs, 7 B. M., 401; Bransom v. Thompson, 81 Ky., 387; Powell v. Gossam, 18 B. M., 192; Beard v. Basey, 7 B. M., 145; Meraman's Heirs v. Caldwell's Heirs, 8 B. M., 32; Biggerstaff's Admr. v. Biggerstaff, 19 Ky. Law Rep., 371; Watt v. Watt, 19 Ky. Law Rep., 25; Meadors v. Goff, 12 Ky. Law Rep., 495; Rose v. Rose, 20 Ky. Law Rep., 417; Mitchell v. Violett, 20 Ky. Law Rep., 378.

(d) As Dr. Thomas L. Winston sold the land in controversy to Wylie Taylor, and one-fourth belonged to the former's wife, the after acquired curtesy estate which came to Winston on the death of his wife enured to the benefit of Taylor, his vendee. Logan v. Moore, 7 Dana, 76; Dickerson's Heirs v. Tolbert's Heirs, 14 B. M., 52; 5 Mon., 426; 4 Bibb, 433; 5 Lit., 391; 4 Mon., 430; 3 Dana, 289; 9 Dana, 475; 3 B. M., 619; 88 Ky., 414; 7 B. M., 401; 81 Ky., 387; 2 J. J. M., 469.

(e) At the death of Mrs. Winston the law cast the title upon Wylie Taylor for life of Thomas L. Winston, with remainder to the heirs of Mrs. Winston.

(f) The statutes of limitation did not begin to run against the remaindermen, children and heirs of Mrs. Parmelia M. Winston, until the death of Thomas L. Winston, when their cause of action first accrued. May's Heirs v. Hill, 5 Lit., 313; Childs v. Calk, 4 Bibb, 554, Miller v. Shackelford, 3 Dana, 293; Stuart v. Jackson, 1 Mar., 59; Finley v. Humble, 2 Mar., 579; Williams v. Williams, 89 Ky., 385; Miller v. Shackelford, 4 Dana, 285; Smith v. Shackelford, 9 Dana, 476; Drane v. Gregory's Heirs, 3 B. M., 619; Taylor v. Shemwell, 4 B. M., 578; Gregory's Heirs v. Ford, 5 B. M., 471; Vanarsdall v. Fauntleroy's

Heirs 7 B. M., 401; Butler v. McMillan, 88 Ky., 414; Bransom v. Thompson, 81 Ky., 388; Jeffries v. Butler, 22 Ky. Law Rep., 226.

5. The title is defective in that Mrs. P. O. Duffy has a contingent right of dower in one undivided one-fourth of the land in controversy.

6. If the deed was not accepted by Mrs. Rose there was nothing more than a parol contract on her part to purchase the land. Usher's Exr. v. Flood, 83 Ky., 552.

7. If Mrs. Rose did accept the deed tendered to her, the defect of title entitled her to a rescission. Laevison, etc., v. Baird, 91 Ky., 204.

8. She was more certainly entitled to a rescission on account of the fact that the interest of the Winston Heirs was an undivided interest, and extended to the whole land. Williams v. Porter, 7 Ky. Law Rep., 533.

PETRIE & STANDARD, FOR APPELLANTS, MARY E. WINSTON AND OTHERS.

### POINTS AND AUTHORITIES CITED.

1. The common law has not been changed in regard to the requisites to constitute an estate by the curtesy. Bransom v. Thompson, 81 Ky., 388; Mitchell v. Violett, 20 Ky. Law Rep., 378.

2. The husband had a right of curtesy under the act of 1846, and further had the right to lease the lands of the wife for a period of their joint lives, and a sale by the husband of the lands of the wife passed to his vendee said right possessed by the husband. General Statutes, chap. 52, art. 2, secs. 1, 2, Revised Statutes, Rose v. Rose, 20 Ky. Law Rep., 417; 8 Ky. Law Rep., 128; 1 B. Monroe, 93; 10 Bush, 260.

3. Distinction between cases where the wife attempts to join in a conveyance of her land made by the husband, and where she makes no attempt to do so. Stephens v. McCormack, 5 Bush, 182; Butler v. McMillan, 88 Ky., 414; Gregory's Heirs v. Ford, 5 B. Monroe, 471.

4. Dr. Winston upon the death of Mrs. Winston became tenant by the curtesy. Amer. Eng. Ency. Law (1st ed.), p. 959; Powell v. Gossom, 18 B. Monroe, 180; Carr v. Givins, 9 Bush, 680; 1 Cyc., p. 1051; Driscoll v. Hanks, 18 B. Monroe, 855; Frazier v. Naylor, 1 Metcalfe, 595; Taylor v. Shields, 5 Litt., 298; Bransom v. Thompson, 81 Ky., 387; Gregories' Heirs v. Ford, 5 B. Monroe, 471; Meraman's Heirs v. Caldwell's Heirs, 8 B. Mon., 82; Vanarsdall v. Fauntleroy's Heirs, 7 B. Monroe, 401; Amer. & Eng. Ency. Law (1st ed.), vol. 4, p. 958; Leading Cases on Amer. Law of Real Property, vol. 1, pp. 237, 261, 262; Jack-

son v. Johnson, 15 Amer. Dec., 434; Webb v. Trustees, &c.,
90 Ky., 117.

5. The curtesy of Dr. Winston passed to his vendee. Logan v.
Moore, 4 Dana, 76; Dickinson v. Tolbert, 14 B. Mon., 52; Miller
v. Shackelford, 3 Dana, 289; 88 Ky., 414; 7 B. Mon., 401; 81
Ky., 387.

6. Cross petitioners were remaindermen during the life time
of Dr. Winston, and therefore no limitations ran against them.
Jones v. McCauley's Heirs, 2 Duvall, 16; Miller v. Shackelford,
3 Dana, 293; Stewart v. Jackson, 1 Mar., 59; Finley v. Humble,
&c., 2 Mar., 571; Boone v. Dykes, &c., 3 Monroe, 530; Simmons
v. McKay, 5 Bush, 25; Keller v. Stanley, 86 Ky., 245; Jeffries
v. Butler, 22 Ky. Law Rep., 226; 1 Cyc., p. 1056, (35), 1057,
and 1058; Amer. & Eng. Ency. Law, (1st ed.), vol 1, p. 23*l*;
Butler v. McMillan, 88 Ky., 414; Bransom v. Thompson, 81 Ky.,
Vanarsdall v. Fauntleroy, 7 B. Mon., 401; Gregory's Heirs
v. Ford, 5 B. Mon., 471; Stephens v. McCormack, 5 Bush, 182.

7. Even if it be conceded that Mrs. Winston had a cause of
action, and that she was within the provisions of the thirty year
statute, this does not affect cross petitioners, and they are not
barred by reason of any cause of action existing in Mrs. Winston
for the recovery of this land. McCorry v. King's Heirs, 3
Hump., (N. C.), 267, 39 Amer. Dev., 165; Orthwein v. Thomas,
(Ill.), 4 L. R. A., 434; Williams v. Williams, 89 Ky., 381; Win-
ters v. DeTurk, 7 L. R. A., 658; Jackson v. Johnson, 15 Amer.
Dec., 434; Bransom v. Thompson, 81 Ky., 387.

HAZELRIGG & CHENAULT, FOR APPELLANTS.

### POINTS AND CITATIONS.

1. The title to one-fourth of the land sought to be conveyed
is not in appellee but is in the cross-appellants heirs of Mrs.
Dr. Winston.

2. The statute of limitations does not bar the right of
recovery of the heirs of Mrs. Winston. Sec. 2351, Kentucky Stat-
utes, Crutcher v. Hord, 4 Bush, 360; Bransom v. Thompson, 81
Ky., 387; Dickerson's Heirs v. Talbot's Heirs, 14 B. M., 52;
Miller v. Shackleford, 4 Dana, 285; Williams v. Williams, 89
Ky., 385.

PERKINS & TRIMBLE AND W. S. PRYOR, ATTORNEYS FOR APPELLEE.

1. *The sufficiency of appellant's title.* If it be conceded that
the appellant, Billie Rose, is entitled to put in issue the suffi-
ciency of the title taken by her under the deed from E. J.
Ware and wife (and this is not conceded), then the paramount
question is, whether or not the alleged cause of action set up

by the cross plaintiffs, M. E. Winston and others for her benefit, is barred by the statute of limitations?

Parmelia A. Duffy died in 1847, the owner of the land in controversy, and on her death her daughter, Parmelia M. (who afterwards married T. L. Winston), took by inheritance the fee simple title to an undivided one-fourth interest in said land. This was a vested interest.    Parmelia M. was married to Thomas L. Winston, May 24, 1852, and died January 13, 1865. Her husband, by his title bond which was not signed by the wife, undertook to sell and to convey to Wiley Taylor the undided one-fourth interest of his wife in said land.    Under this title bond Wiley Taylor immediately took possession and he and his vendees down to the date of the deed to the appellant, have at all times been in the actual peaceable and adverse possession of this land claiming the same as their own.  This sale was made November 25, 1858.

Thos. L. Winston's rights in his wife's land were determined by the act of the Kentucky Legislature of 1846, under which he acquired no semblance of right or title therein, and his sale and title bond to Wiley Taylor was utterly void, and Wiley Taylor took nothing thereby, and when he entered upon the land November 25, 1858, he thereby became a trespasser as to the wife of Thomas L. Winston holding her land adversely and hostile to her claim and title.

2. *Limitation.* Under this adverse holding and continuous claim for more than thirty years, we claim that the possession thus held repined into a title which can not be defeated or questioned, Taylor's holding being hostile from the beginning.

3. Even if Wiley Taylor's holding under the title bond was friendly for three years from the date thereof, yet on November 26, 1861, Mrs. Winston's right to recover the land had accrued and this notwithstanding the civil war.

4 T. L. Winston was never a tenant by the curtesy.

5. Neither T. L. Winston nor his vendee was at any time a trustee for Mrs. Winston or her children, nor did they ever so hold the land in controversy.

6. The thirty years statute of limitation began to run against Mrs. Winston in her life time notwithstanding the disability of coverture, and the disability of the civil war, and on her death, having begun to run, it continued until the bar was complete, and which was not later than November 26, 1891.

7. The plaintiff's right to sue, if any, was not a new right and existing for the first time after the mother's death, but was the same old right of action that accrued to the mother in her life time and against which the statute began to run.

8. The appellee is remote vendee of those in actual possession

claiming the absolute fee, and for such a length of time as to ripen into a perfect title.

## AUTHORITIES CITED.

Cooley on Constitutional Limitations; Rose v. Rose, 104 Ky., p. 48; Detheridge v. Woodruff, 3 Mon., p. 245; 2 Lit. Laws of Kentucky, 498; 1 Morehead & Brown, 581; Laws of 1845-6, 42; Revised Statutes, vol. 2, chap. 47, art. 2, p. 8; Webber v. Gibson, 8 Ky. Law Rep., 128; Johnson v. Sweat, 81 Ky., 392; Mantle, etc. v. Beal, 82 Ky., 124; Williams v. Williams, 11 Ky. Law Rep., 608; Bankston v. Crabtree Coal Mining Company, 16 Ky. Law Rep., 15; Brown v. Swango, 16 Ky. Law Rep., 381; Medlock v. Suter, 80 Ky., 101; 3 Ky. Law Rep., 587; Tucker v. Price, 17 Ky. Law Rep., 11; Coffey v. Wilkerson, 1 Metcalf, 105; Roberts v. Roberts, 7 Bush, 100; Bradley v. Burgess, 87 Ky., · 650; L. & N. Railroad Co. v. Thompson, 20 Ky. Law Rep., 1110; ———— v. Brown, 15 Wallace, 177; Hanger v. Abbott, 6 Wallace, 532; Selden v. Preston, 11 Bush, 204; Crutcher v. Hoard, 4 Bush, 368; Buswell on Limitations, secs. 129, 119, 122; Stilwell v. Leavy, 8 Ky. Law Rep., 321; Bransom v. Thompson, 81 Ky., 391; Butler, etc. v. McMillan, 11 Ky. Law Rep., 23; Blackstone, Book 2, p. 100 (127); Welcher's Heirs v. Chandler, 13 B. Mon., 420; Steinbaugh, etc. v. Wisdom, 13 B. Mon., 467; Meeley et al. v. Butler, 10 B. Mon., 50; Connor and Wife v. Downer, 4 Bush, 631; Dembitz Kentucky Jurisprudence, 320; Yankee, etc. v. Sweeney, etc., 85 Ky., 64; Ellis v. Ditty; Murray v. Fishback, 5 B. Mon., 403; Vanarsdale v. Fauntleroy's Heirs, 7 B. Mon., 401; Revised Statutes, sec. 28, chapter 37; Revised Statutes, sec. 2345, chap. 63, art. 1; Wilson v. Louisville Trust Co., 19 Ky. Law Rep., 1594; 2 Morehead & Brown Statute Law of Kentucky, 1131, 1125, 1132; Beauchamp v. Mudd; Langford's Admr. v. Gentry, 4 Bibb, 469; Crozier v. Gano, 1 Bibb, 260; Haddix Heirs v. Davison, 3 Mon., 42; Shuffit v. Shuffit, 9 Ky. Law Rep., 207; Anderson v. Bona, 11 Ky. Law Rep., 219; Ray v. Thurman's Executor, 13 Ky. Law Rep., 3; Call v. Phipp's Admr., 20 Ky. Law Rep., 510; Hawes v Kirk, 18 Ky. Law Rep., 215; Trail v. Turner, 22 Ky. Law Rep., 101; Mitchell v. Violett, 20 Ky. Law Rep., 378; Phillips v. Farley, 22 Ky. Law Rep., 2201; Keller v. Stanley, 9 Ky. Law Rep., 390.

OPINION OF THE COURT BY JUDGE BARKER—AFFIRMING.

Appellee, E. J. Ware, instituted this action to recover a judgment on a note of appellant Billie Rose, dated May 9, · 1899, and due one day thereafter, for the sum of $9,000.

Rose and Others v. Ware.

Appellant, in her answer, admits signing and delivering the note, but sets up as a defense: That it was executed and delivered pending a negotiation between her and appellee looking to the purchase by her of a farm owned by him. That the terms of the sale had been agreed upon, subject to the condition that appellee's title was found to be valid, and was approved by appellant's agent. That appellee's title was found to be defective by her agent, and was rejected by him. That the defects in the title were: First, that he had only a possessory title, at best, to any of the land; and, second, the heirs at law of Parmelia M. Winston, the wife of a remote vendor, owned one-fourth of it; third, that Mary E. Duffy, the wife of another remote vendor, had an inchoate right of dower in the whole tract; fourth, that Wiley Taylor, still another remote vendor, had some interest or so claimed. That appellee, knowing his title to be defective, fraudulently concealed that fact from her, falsely representing that he had an indefeasible title to the land. That these fraudulent representations, and the assurance that the note would not bind her for its payment, unless the sale was finally consummated, induced her to deliver it to him. Wherefore she prayed for a surrender up and cancellation of the note sued on. Upon the filing of this answer the case was transferred to equity upon the motion of appellant. By an amended answer, Mary E. Winston, T. M. Powell, Mary Powell and Eliza Powell, the heirs at law of Parmelia Winston, were made parties, and called upon to assert any claim they might have to the land. Appellee, by reply, denied all of the material allegations of the answer, and pleaded affirmatively that he was possessed of an indefeasible title to the land, and that he and his grantors had been in the continuous adverse possession of it for more than thirty years last past. By a re-

joinder the allegations of the reply were controverted. It is not necessary to set out the allegations of the various pleadings in this case at greater length or detail. For all practical purposes the issues were made up along the lines thus indicated. Afterwards the heirs at law of Parmelia M. Winston filed their answer, which they made a cross-petition against appellee, claiming through their ancestor, Parmelia M. Winston, to own one-fourth of the land involved in this litigation. By an agreement entered of record it was stipulated that the same issues made between E. J. Ware and Billie Rose should be considered to exist between appellee and the cross-petitioners, and that all the evidence taken in the case should be read on these agreed issues.

The first question to be decided is whether the transaction which took place between appellant and appellee on the 9th day of May, 1899, was or was not an executed contract. The negotiations for the sale of the farm had been carried forward fitfully for eight months or a year prior thereto. In these negotiations appellant had taken little or no part personally. Her interest seems to have been looked after by her mother, Mrs. M. I. Donnelly, who was anxious that the purchase should be made, and who was fully authorized to speak for her daughter in the negotiations between her and appellee. There is a complete failure on the evidence to show any fraud or overreaching upon the part of appellee, or to put him in the attitude of being unduly anxious to make the trade; nor is there any foundation in the record for the charge that he knew or suspected there was any defect in his title. Appellant's mother, by writing signed by her, offered to purchase the farm from appellee at the price of $60 per acre. Both appellant and her mother state that, while they knew this was a high price, they were willing

to pay it. On May 9, 1899, appellee called at the house of appellant, where he and Mrs. Donnelly and the appellant consummated the pending negotiations by his executing and delivering to appellant a deed for the land, and her executing and delivering to him the note sued on. The evidence upon this branch of the case is reduced to the testimony of appellee on the one hand and Mrs. Donnelly, the agent of appellant, who negotiated the trade, on the other. Appellee testifies that it was absolute and unconditional. Mrs. Donnelly testifies that it was conditional upon the approval of appellant's agent. The burden of establishing by a preponderance of the evidence that the sale was conditional was upon appellant. Upon this issue of fact the chancellor decided adversely to her, and we are not able to say, from all the evidence in the record, that he erred in so doing.

We come now to a consideration of the question of defects in appellee's title. In the year 1847, Parmelia A. Duffy, the wife of Col. Francis Duffy, died, owning a body of about 920 acres of land, of which the farm involved in this litigation was a part. She left surviving her a husband and four children, F. M. Duffy, Michael E. Duffy, P. O. Duffy, and Parmelia M. Duffy. After the death of his wife, Col. Francis Duffy, remained in possession of her real property, as tenant by curtesy, until his death, in 1858. On the 24th day of May, 1852, Dr. Thomas L. Winston intermarried with Parmelia M. Duffy, one of the four heirs at law of Parmelia A. Duffy, deceased, and in 1858, immediately after the death of his father-in-law, purchased the undivided interest in his three brothers-in-law in the real estate left by their mother, and he and his wife became the owners of the whole; he owning three-fourths and she owning one-fourth thereof. In the same year he sold the whole tract

of 920 acres to one Wiley Taylor for the sum of $44,000; $11,000 of which was paid cash, and the balance to be paid at stated intervals thereafter. For the land thus sold he executed and delivered to his grantee a bond for title, conditioned, upon the final payment of all the purchase money, to convey the land by deed of general warranty. Upon the sale thus made to him Wiley Taylor entered and took possession, and he and his descendants and vendees, near and remote, have held and occupied the land from the time of sale until the institution of this action.

It can not be questioned that Dr. Thomas L. Winston undertook to sell all of the land owned by himself and wife as tenants in common, or that the vendee took possession of it and held it as his own, believing that when he paid the purchase money he would receive a valid deed of conveyance therefor. After thus taking possession, Wiley Taylor sold 100 acres of the land to one Dr. Grady, and a small tract of it to the Louisville & Nashville Railroad Company. In 1860 he died intestate, and the land descended to his children, of whom he had several. In 1862 it was partitioned among his children, who took possession of their respective portions. After his death his son W. H. Taylor administered his estate, and paid off the balance due of the purchase price, the last of the notes being taken up in January, 1863. In 1865 Parmelia M. Winston died, leaving two daughters—Mary E. Winston and Bettie Winston. The latter, having married one Powell, afterwards died, leaving three children—T. M. Powell, Mary Powell, and Eliza Powell—who, together with their aunt, Mary E. Winston, constitute the cross-petitioners in this action. In 1895 Dr. Thomas L. Winston died.

On the part of appellants it is claimed that the possession of Wiley Taylor was not adverse, but amicable, to Par-

melia M. Winston, and, as the sale by her husband to him did not pass her title, at her death she was in possession, and her husband became entitled to a life estate by curtesy, which at once vested in his vendee by virtue of the sale in 1858, and therefore no cause of action ever accrued to Parmelia M. Winston, or her heirs at law, until the death of Dr. Thomas L. Winston in 1895, they being remaindermen during that period. There would be much force in this contention had the sale by Winston to Taylor taken place prior to the act of 1846, for before the enactment of that statute the husband had a vendible interest in his wife's land, which he could sell, and which could be sold for his indebtedness, and therefore when he alone undertook to sell his wife's land, his life estate passed to his grantee, and neither his wife, nor her heirs at law after her death, had a right of action until the termination of the life estate by the death of the husband. But even then, when the wife joined the husband in the sale, whether her act was valid or invalid, the vendee who took possession under the deed was construed to hold adversely to the wife, and the 30-year statute at once commenced to run against her, and continued to run against her heirs after her death, without regard to the question of disability. This principle is established by the cases of Medlock v. Suter, 80 Ky., 101, 3 R., 587, 763; Mantle v. Beal, 82 Ky., 122, 5 R., 889; Bradley v. Burgess, 87 Ky., 648, 10 R., 701, 10 S. W., 5.

Since the act of 1846 (Laws 1845-46, p. 42, c. 368) a husband has had no vendible interest in his wife's land, and if he undertakes to sell it in fee simple, with or without her joining in the sale, and the purchaser takes possession thereunder, then the wife's right of action immediately accrues to her, and the 30-year statute of limitation commences to run against her, and continues, in case of her

Rose and Others v. Ware.

death, to run against her heirs at law, without reference to any disability; and, when the statutory period has expired, bars all right of recovery. In the case of Bankston v. The Crabtree Coal Mining Company (95 Ky., 455, 16 R., 15), (25 S. W., 1105), it is said: "It is evident that the entry of Woodruff was hostile to the title of the female appellant, and his holding adverse to her. But for her disability, she could have asserted her cause of action immediately upon his entry. This is true because she did not join in the grant, and as to her the deed of her husband was of no effect. That deed did not convey any right to the vendee. Since the statute of 1846 the husband has had no vendible interest in his wife's land, and, as the deed of 1871 must be regarded as his deed alone, the wife's right of action accrued at once." In the case cited the 30-year statute of limitation was not involved. The opinion is quoted from as establishing the principle that since the enactment of the statute of 1846 a vendee taking possession of the wife's land under a sale by the husband holds adversely to her, and she has at once a right of action against him. In the case of Johnson v. Sweat, 81 Ky., 394, 5 R., 358, it was held that where, since the act of 1846, the husband alone sold the wife's land, she had at once a cause of action against the vendee who took possession under the sale, and the 30-year statute commenced to run. In this case the 30 years not having expired, the claim of the wife was held not to be barred; but the principle above stated was fully determined. In the case of the Louisville & Nashville R. R. Co. v. Thompson (105 Ky., 190, 20 R., 1110), (48 S. W., 990), the husband, D. B. Thompson, in the year 1856, by a writing, without the consent or permission of his wife, gave the Louisville & Nashville Railroad Company the right to build its Knoxville Branch Road through the center

Rose and Others v. Ware.

of the wife's land. In 1897 the husband died, after which time the wife instituted an action for compensation. The answer, among other things, pleaded the 30-year statute of limitation. In considering the validity of this plea, the court reviewed and discussed nearly all of its former decisions relative to it, and said: "In the case at bar it is claimed in the answer, and not denied in the reply, that appellant held and claimed adversely to the appellee for more than 40 years before the institution of this suit; and, besides, the proof conduces to establish the same fact. It therefore follows that there had been an actual adverse possession, and it seems clear from the statute, as well as the decisions of this court, that appellee's right to recover was absolutely barred by limitation." The court further said, in commenting on the cases bearing on this point: "The question decided in the last-named case (Gregory's Heirs v. Ford, 5 B. Mon., 471) was under the law as it existed prior to the act of 1846, and is not at all applicable to the case at bar." The case of Bransom v. Thompson, 81 Ky., 387, 5 R., 359, must not be understood as conflicting with Johnson v. Sweat, Id., 392, decided three days later, for there no question of limitation arose, as 30 years had not elapsed, and the only question before the court was whether the husband was entitled to curtesy on the facts shown, under the construction of the statute previously made in Carr v. Givens, 9 Bush, 679, 15 Am. Rep., 747.

It is urged by appellants that Dr. T. L. Winston and his wife were residents of the State of Tennessee, which State, from 1861 to 1865, was a part of the Confederate States, and at war with the Unitea States, and that during this period no right of action existed in Mrs. Winston; and that, she having died in 1865, pending the war, no right of action had accrued to her up to the time of her death, and

for this reason the statute did not apply to her. In the case of Stillwell v. Leavy, 84 Ky., 379, 8 R., 321 (1 S. W., 590), this court said: "No disability of coverture, of infancy, or by reason of the existence of war between the claimant's country and that of the defendant, or any other 'disability whatever,' can save the right to bring an action for the recovery of real property adversely held for a longer period than thirty years from the time the right of action first accrued to them."

From these cases we deduce the rule that no disability whatever will prevent the running of the 30-year statute of limitation if a right of action would have existed in the claimant but for the disability.

It is also contended by appellant that, inasmuch as Dr. T. L. Winston and his wife were tenants in common, the husband's vendee, Wiley Taylor, was also a tenant in common with the wife, and therefore his occupancy of the land thus held must be construed as amicable, and not adverse. It is true that the general rule is that the holding of one tenant in common is never construed to be adverse to his co-tenant alone from the fact that he is the sole occupant of the land; but it is also true that a tenant in common may so act with reference to his co-tenant as to amount to an ouster, and when this happens his holding will thereafter be adverse, and not amicable, with reference to his co-tenant. In the case of Gillaspie v. Osburn, 3 A. K. Marsh, 77, 13 Am. Dec., 136, it is said: "The relations between tenants in common, or even between joint tenants, is not such as to estop one co-tenant from acquiring and holding the possession adverse to another. It is true, where one tenant in common or joint tenant enters generally, it will be presumed to be for the purpose of acquiring

and holding possession for the benefit of his co-tenant as well as himself; but this is a presumption of fact which may be repelled by other evidence." In the case of Larman v. Hughie's Heirs, 13 B. Mon., 437, it is said: "That one tenant in common may thus acquire an adverse possession is decided in the case of Gillaspie v. Osburn, 3 A. K. Marsh., 77 [13 Am. Dec., 136], and follows from the concessions made in numerous cases that even a lessee or actual tenant, though taking possession under his landlord, may convert this friendly into an adverse possession." In the case of Call v. Phelps' Adm'r (20 R., 507), 45 S. W., 1053, it is said: "It can not be disputed as a principle of law that the possession of one of several joint tenants is the possession of all, and that the statute, therefore, does not run in favor of one against the others, unless there be an adverse holding; but one tenant may so enter and hold as to render the entry and possession adverse, and amount to an ouster of his co-tenants, and, if one is in the possession of and claiming the entire property by deed, then the holding is adverse, and the limitation begins to run when he so takes possession"—citing Greenhill v. Biggs, 85 Ky., 155, 8 R., 825, 2 S. W., 774, 7 Am. St. Rep., 579; Riggs v. Dooley, 7 B. Mon., 236; Russell's Heirs v. Marks' Heirs, 3 Metc., 38; Gossom v. Donaldson, 18 B. Mon., 230, 68 Am. Dec., 723. In the case of Chambers and Others v. Pleak, 6 Dana, 426, 32 Am. Dec., 78, the court says: "But it has been determined in the case of Doe v. Prosser, Cowper, 217, and other cases collected in Cruise's Digest, . . . that the possession for a long period—as thirty-six years or more—by one co-tenant in common or joint tenant, without any account, or demand made, or claim set up by his co-tenant, was a sufficient ground for the jury to presume an actual ouster." The question of ouster is always a question of

fact to be determined by the jury, and it may be inferred
from the facts proved.  The entry of a person under a con-
veyance which purports to convey the whole property is
equivalent to an express determination upon the part of
the grantee that he enters claiming the whole to himself.
The receipt, for a long period of time, of all the rents and
profits of a tract of land, is a fact which may properly be
admitted in evidence before the jury to assist them in de-
termining whether there has been an ouster.  That one
tenant in common has been in possession for a great num-
ber of years without any accounting to his fellow common-
ers is proper evidence from which the jury may infer an
adverse possession.  In some instances such possession has
been regarded as raising a presumption of law which the
jury are not at liberty to resist.  An exclusive possession
under a claim of title for 40 years, while the other tenants
resided in the same county, and failed to assert any claim
to their property, warrants the assumption of an actual
ouster.  Freeman on Co-Tenancy & Partition, sections 224-
232, inclusive; Buswell on Limitation & Adverse Posses-
sion, sections 296-302, inclusive; and note in Gillaspie v.
Osburn, 13 Am. Dec., 136.

Considering Wiley Taylor and Mrs. Winston, the wife
of his vendor, as tenants in common, we think the evidence
in this case clearly shows an ouster of her by him, and
therefore a right of action in her against him. for this
wrong.  The bond for title shows that he purchased, or at-
least attempted to purchase, the land in fee simple.  He
paid $50 per acre for it in 1858.  Appellants claim it is not
worth over $35 per acre now, although it is in close prox-
imity to a thriving town, which has grown up since 1858.
After getting possession, he immediately sold off parts ot
it, to the exclusion of the rights of his co-tenant.  He in no

manner recognized her rights, or accounted to her for rents or profits. After his death his children took possession of it as a part of his estate, and partitioned it among themselves. The deposition of W. H. Taylor, who was the son and administrator of the estate of Wiley Taylor, shows —and he is not contradicted—that the possession by his father of the land was notorious, open, and continuously adverse from 1858 until his death, in 1860; that he claimed to be the exclusive owner, and acted as such in every particular, exercising absolute dominion over it, and accounting to no one for any rents or profits; that this state of affairs continued with reference to the land, after his death, by his children and their vendees, near and remote, until the institution of this action—more than 40 years; that during all this time he had never heard of the claim of the cross-petitioners or that of their mother.

We can not conceive of any act, which would constitute an ouster by one co-tenant of another, short of physical violence, which has not been shown to have been done by Wiley Taylor, his descendants and vendees, with reference to the land in question; and we are clearly of opinion that Parmelia M. Winston had a cause of action against Wiley Taylor, and against his descendants and vendees in her lifetime, for the recovery of her interest in the land involved in this litigation, and that, therefore, the 30-year statute commenced to run against her despite the disability of coverture, or the existence of the war between the States, and continued to run against her descendants, after her death, until their right was barred by the expiration of 30 years.

In regard to the inchoate right of dower of the wife of Francis Duffy, it may be said that it may never accrue, and, if it does, appellant can look for indemnity to appellee's covenant of warranty. No claim of title to the land in ques-

tion has ever been asserted by Wiley Taylor, the grandson of the original purchaser from Dr. T. L. Winston. On the contrary, he has disclaimed all right or title to it, and executed and tendered a quit claim deed to the appellant.

As the judgment rendered by the chancellor carries into practical effect the conclusions herein reached, the case is, affirmed.

Petition for rehearing by appellant overruled.