## Dotson v. Dotson, et al.

(Decided December 8, 1916.)

Appeal from Pike Circuit Court.

1. Husband and Wife—Adverse Possession—Limitation of Actions.— Where an infant married woman joins with her husband in a conveyance of her remainder interest in real estate, and her vendee, under some arrangement with the holder of the life estate, takes possession, his holding is adverse to the remainderman, and her right to bring an action to cancel her voidable deed accrued at once, and the thirty-year statute of limitation began to run against her and continued to run notwithstanding her coverture.

2. Adverse Possession—Remainders.—The holding of a vendee of a remainder interest in land, who procures possession thereof from the holder of the life estate, is adverse to the remaindermen.

3. Husband and Wife—Conveyance by Infant Married Woman.— Where there is a sale and conveyance by an infant married woman of her interest in real estate, the thirty year statute begins to run against her because, under its terms, her coverture affords her no immunity.

4. Husband and Wife—Limitation of Actions.—While the remainderman retains her interest, she is not bound to speak or take any action during the existence of the life estate, either against the holder of that estate or her vendee; but when the remainderman herself has, by conveyance, parted during infancy with her title, and her vendee takes possession of the property under an agreement with the holder of the particular estate, then her right of action to set aside her voidable deed accrues.

5. Husband and Wife—Rents—Action for Recovery.—Under the General Statutes, chapter 52, Article 2, section 1, the husband was entitled to the rents from his wife's general estate; therefore, where the husband survived the wife there was no right of action in

the wife's personal representative for the recovery of rents accru-
ing during their joint lives.

ROSCOE VANOVER, J. S. CLINE, O'REAR & WILLIAMS and
HAGER & STEWART for appellant.

HOBSON & HOBSON, J. P. HOBSON & SON and J. M. BOWL-
ING for appellees.

OPINION OF THE COURT BY JUDGE TURNER—Reversing
original and affirming cross-appeal.

Appellee, Keziah Dotson's maiden name was Keziah
Smith, she being the daughter of George and Elizabeth
Smith, and born on the 26th of January, 1851. When
she was a small child her father died, and thereafter her
mother married one John Charles, who died in the year
1869, leaving a will by which he devised the lands in con-
troversy to his widow, Elizabeth, for life and in remain-
der to his stepdaughter, the appellee, Keziah Smith, now
Dotson.

In 1869 Keziah Smith was married to W. R. Dotson,
she at the time being eighteen years of age, and there-
after, 1870, her mother, Elizabeth, married G. D. Dotson,
the father of W. R. Dotson.

Thereafter all of the parties for a time lived on the
land in question, the mother, Elizabeth, having a life
estate and the daughter, Keziah, the remainder interest.

On the 10th of January, 1872, sixteen days before
Keziah became twenty-one years of age, she and her
husband, W. R. Dotson, conveyed the land in question
to G. D. Dotson, the mother, Elizabeth, still retaining
her life estate.

Shortly thereafter Keziah and W. R. Dotson re-
moved to another tract of land in the vicinity. Eliza-
beth, the holder of the life estate, and G. D. Dotson, her
husband, the holder under this deed from Keziah of the
remainder interest, continued to occupy the lands until
about 1875, at which time, under some verbal arrange-
ment or agreement, the purpose of which is claimed to
have been the recanting of the trade between G. D. Dot-
son and Keziah whereby she had conveyed to him her
remainder interest, Keziah and her husband, W. R. Dot-
son, moved back on the tract of land in question and re-
mained there during the year 1875 and a part of the
year 1876. They again in 1876 moved off of the land
and from that time until the spring of 1884 Elizabeth,
the holder of the life estate, and her husband, G. D. Dot-

son, the holder of the remainder interest under Keziah's deed, continued to occupy the land, Elizabeth never having at any time parted with her life estate.

In the spring of 1884 G. D. Dotson conveyed the land in question to his half-brother, the appellant, D. H. Dotson, and notwithstanding his wife, Elizabeth, failed to join him in the deed, she and her husband promptly upon the sale and conveyance by G. D. Dotson to D. H. Dotson moved off of the land and gave the possession thereof to D. H. Dotson, although Elizabeth at the time, and at all times up to her death in 1908, was the holder of the life estate.

The deed of Keziah and W. R. Dotson to G. D. Dotson, dated the 10th of January, 1872, purports only to convey to the grantee their interest in the tract of land in question, but the deed from G. D. Dotson to G. H. Dotson undertakes to convey to the grantee, with covenant of general warranty, the full title to the property embraced therein.

According to the evidence the appellant, D. H. Dotson, from the time he entered on the land in April, 1884, up to the trial of this action in the lower court had been in actual possession of the property, living on it each and every day of that time, and during most of that time the appellee, Keziah Dotson, lived in the neighborhood, and a part of the time in sight of the property, and not only knew of his possession but witnessed throughout those years his repeated improvement of the same in every way.

Elizabeth, the mother of Keziah, lived until October, 1908, at which time she died without ever having parted with her life estate in this property, although she and her husband had given possession of the same to D. H. Dotson under her husband's sale to him in 1884. From 1872, when the appellee, Keziah Dotson, together with her husband made the deed to G. D. Dotson, until May, 1914, when this action was brought, Keziah Dotson was at all times a married woman and under the disability of coverture.

In May, 1914, Keziah brought this suit to have cancelled the deed made by her and her husband in January, 1872, to G. D. Dotson, and the deed made by G. D. Dotson to D. H. Dotson, and to have it adjudged that she was the owner of the land in fee. During the pendency of the first action another action was instituted by the

administrator of Elizabeth Dotson, the mother of Keziah, seeking the recovery of the rental value of the property from D. H. Dotson during the life of Elizabeth Dotson. The two actions were consolidated and the court on a final hearing cancelled the two deeds in question and adjudged Keziah to be the owner of the land, but adjudged in the other suit that the rents should be off set against the improvements, and from that judgment D. H. Dotson has appealed, and the appellees prosecute a cross-appeal from so much of the judgment as off sets the rents against the improvements.

Several defenses were interposed by the defendant, but the only one we deem it necessary to consider is that of limitation, he having pleaded the thirty-year statute in bar of the plaintiff's right to recover. The sections of the statutes involved are 2505, 2506 and 2508, which deal with limitations of actions for the recovery of real estate. These sections are as follows:

"Section 2505: An action for the recovery of real property can only be brought within fifteen years after the right to institute it first accrued to the plaintiff, or to the person through whom he claims."

"Section 2506: If, at the time the right of any person to bring an action for the recovery of real property first accrued, such person was an infant, married woman, or of unsound mind, then such person, or the person claiming through him, may, though the period of fifteen years has expired, bring the action within three years after the time such disability is removed."

"Section 2508: The period within which an action for the recovery of real property may be brought shall not, in any case, be extended beyond thirty years from the time at which the right to bring the action first accrued to the plaintiff, or the person through whom he claims by reason of any death or the existence or continuance of any disability whatever."

While it is perfectly apparent from a reading of these sections that it was not the legislative purpose that the fifteen-year statute should run against persons laboring under the disabilities prescribed in section 2506, and that such persons should have a period of three years after the removal of such disabilities within which to institute action, it is likewise perfectly clear from the provisions of section 2508 that it was the purpose of the legislature to prescribe a period beyond which no disability

would preserve the right to institute an action. All statutes of limitations are statutes of repose and evidence a purpose by express legislation to fix the time within which persons must assert their rights so that dealings and tradings among them may not be hampered or hindered by conflicting claims of title; and particularly has this policy application to our system of recordation of real estate titles.

The plaintiff's suit is essentially one to have cancelled the deeds in question and to recover the land, which would necessarily follow if the deeds were canceled, and her action for this purpose was brought in May, 1914. The prayer of her petition is that these two deeds be cancelled and that she be adjudged to be the owner of and be awarded possession of the lands in controversy.

The vital questions in the case are: (1) when did the right to bring this action accrue to the plaintiff? and, (2) was the holding of the appellant, D. H. Dotson, and his vendor, G. D. Dotson, adverse to the appellee, Keziah Dotson?

The courts of this state many times have considered cases where a vendee was holding under a conveyance of title taken from the holder of the life estate, and without exception almost have held that such a vendee was not holding adversely to the remainderman, and that there being no right of entry by the latter until the expiration of the particular estate, the statute of limitation did not begin to run against him until that time; that no matter how long one might remain in possession under title from the holder of the life estate, it was not adverse to the remainderman.

But here we have a wife holding the life estate and her husband holding the remainder interest under a voidable deed from the remainderman; we have the holder of the life estate and the infant holder of the remainder interest living on the property, the holder of the life estate presumably in possession; we then have the infant holder of the remainder interest conveying her interest to the husband of the holder of the life estate, and then immediately removing from the place and leaving the husband and wife so holding the life estate and the remainder interest in possession of the property; then a few years later we have the holder of the remainder interest so holding under a voidable deed convey-

·ing or undertaking to convey before the expiration of the particular estate the full title to another, and we have the holder of the life estate and the holder of the remainder estate delivering possession to the vendee of the holder of the remainder interest although the life estate holder has never parted with her title; and we have this vendee of the holder of the remainder interest thus taking possession from the holder of the life estate and the holder of the remainder interest improving the property, exercising every possible act of ownership over it for nearly twenty-five years during the life of the holder of the life estate without interference from her, and for more than thirty years before the institution of this action.

The only basis upon which the plaintiff's right to recover is predicated is her right to have set aside her deed made in infancy. It is conceded that if it is set aside she, under the will of Charles, took the remainder interest in the land. Her right of action at no time depended upon her right of entry or upon the determination of the life estate. The right of possession did not affect her right to bring an action to have set aside this voidable deed. She is now seeking in this action to recover by having her voidable deed set aside, the very thing which she could have maintained an action to recover at any time after the execution of her deed in January, 1872.

The fact that her mother, the holder of the life estate, was still living, certainly could not have prevented her from bringing an action to cancel her deed made in infancy and have herself adjudged to be the owner of the remainder interest. It was not essential that she should have a right of entry before maintaining such an action, and in this respect the case at bar is essentially different from most of the cases relied upon by the appellee. That the right of the plaintiff to bring this action accrued immediately upon execution of the deed in January, 1872, we have no doubt.

Then it only remains to consider whether the possession of appellant, D. H. Dotson, was adverse to appellee from March, 1884, when he purchased from G. D. Dotson, as it is unnecessary to consider whether the holding of G. D. Dotson under the deed was adverse while he and his wife, Elizabeth, who was the holder of the life estate, remained on the land; for D. H. Dotson himself.

had actual possession and occupancy of the land for more than thirty years before the institution of this suit.

As above stated, upon the purchase by D. H. Dotson from G. D. Dotson in 1884, G. D. Dotson and his wife gave possession to D. H. Dotson, although the wife had never parted with her life estate in the land. So that we then have for the first time the merging of the life estate and the remainder interest to the extent that D. H. Dotson held title to the remainder interest and held the possession which had been given to him by the holder of the life estate. A statement of the facts would seem to make it conclusive that his holding was hostile at least to the remainderman, as he held record title to the remainder interest and made extensive improvements upon the land and exercised every possible act of ownership.

If appellant had entered under a conveyance from or merely under a possession from the holder of the life estate, and appellee, Keziah, had continued to hold her remainder interest, the case would be a very different one. Such holding could in no sense be treated as hostile to her title, and she would be required to take no steps to oust him as long as the particular estate was in existence; but here not only did he have title to her remainder interest, but he had actual possession which had been delivered to him by the holder of the life estate. It is inconceivable that any one could have misunderstood the character of his holding under these conditions.

In Medlock v. Suter, 80 Ky. 101, Medlock and wife by oral contract sold to Snelson a tract of land belonging to Mrs. Medlock; Snelson died shortly thereafter and Medlock and wife put Snelson's children in possession of the land. They remained in possession until the filing of the suit in February, 1873. Mrs. Medlock having died in 1843, Medlock thereafter made a deed to the heirs of Snelson. After the death of Medlock the heirs of Mrs. Medlock brought a suit to recover the land, and this court in construing the character of the possession held by Snelson's children said:

"Whether the possession be considered as held under a contract of sale that was void, and consequently without color of title, or under an executory contract, and therefore, in legal contemplation, the possession of Mrs. Medlock and those claiming under her, we are of

the opinion that, if in fact the widow and children of Tinsley M. Snelson entered under the purchase made by him, and held the actual open possession of the land, using and claiming it for and as the land of his children and heirs at law, such possession was adverse, and the right to bring an action for the recovery of it thereupon accrued to Elizabeth Medlock.''

In that case the husband had a life estate and the wife the remainder interest, and all that the wife did was to participate in the verbal sale of the property and co-operated with her husband in putting the Snelson children in possession of the same, and the court held that the statute of limitations then began to run against her.

The case of Bransom v. Thompson, 81 Ky. 387, was where land was owned by the wife and she and her husband executed a power of attorney authorizing their agent to sell it. He did sell it and placed the vendee in possession, but as the power of attorney was void no title passed. At the time the power of attorney was executed the wife was an infant and a married woman, and although the court held in that case that the thirty-year statute had no application, it went into an extensive discussion of the application of that statute in an explanation of the case of Suter v. Medlock above referred to. In this discussion it was said:

''The case of Suter v. Medlock is certainly misunderstood by counsel on both sides.

''There is a period at which no right of action exists for the recovery of land, or rather, when the right of action is barred, and this is fixed at thirty years, although the party making the sale was laboring under a disability at the time of the sale. The disability of infancy or coverture, or both combined, will not stop the running of the thirty-year statute. If an infant or a married woman sells her land with or without the consent of the husband, and the party is placed in possession and holds the land, or those claiming under him, for thirty years, then the statute provides that no recovery shall be had, with the further provision that the disability was removed at the time of the sale, the right of entry or the right to sue existed. To illustrate: If the husband and wife sell, the wife being an infant or *femme couverte,* a possession for thirty years under the sale would bar a recovery by the wife or her heirs, because, if she was not under disability, the title would have

passed, and no cause of action could exist; or if the sale of the absolute fee was by the husband alone, the wife could not sue, because if, at the time of the sale by him, her disability had been removed, the right of entry would exist. The thirty-year statute does not apply when the cause of action has not accrued; as, when the tenant for life sells, the remainderman cannot sue until the termination of the life estate; but when there is a sale, or the party entitled could have sued, but is laboring under the disability of infancy or coverture, the thirty-year statute runs, because the disability under that statute affords no protection. This is not the rule applicable to any other statute, and the thirty-year statute was enacted so as to prevent a recovery for no other reason than that they were infants or *femme couvertes* when the cause of action accrued. This statute denies the right of entry after thirty years, and says that no disability will permit it if you had a cause of action, provided no disability existed, and it was in that light the case of Suter v. Medlock was discussed."

This same distinction pointed out in the Bransom case is made in the case of Butler v. McMillan, 88 Ky. 414, where the court said in discussing the thirty-year statute: "All the cases have preserved the remainder by holding that unless there was a sale by the one laboring under disability, the statute did not commence to run until the disability was removed."

Likewise in Rose v. Ware, 115 Ky. 420, after a lengthy review and discussion of this statute and the cases under it, the court said: "From these cases we deduce the rule that no disability whatever will prevent the running of the thirty-year statute of limitation if a right of action would have existed in the claimant but for the disability."

In Mantle v. Beal, 82 Ky. 122, the husband and wife executed a title bond for the wife's land, although the bond was void as to the wife, and the court held that under the thirty-year statute when there is a sale either executed or executory, and the purchaser enters claiming under his purchase, the *feme covert* is afforded no protection after the lapse of thirty years.

In this case, Keziah, the one laboring under the combined disability of infancy and coverture, made the deed to her own property, and there can be no doubt that but for her coverture and infancy she could have at any

time after the 10th of January, 1872, maintained an action to have her deed cancelled, and having that right the statute immediately began to run against her; she as the holder of the remainder, as long as she retained that interest, was not bound to speak or to take any action to preserve her rights as remainderman, for the reason that she was not then entitled to enter, but when she did take action by executing a deed for her remainder interest, and thereafter the holder of her title took possession under some arrangement with the holder of the life estate, she must be presumed to know that the holding was adverse to her. We entertain no doubt that the right to bring this action' accrued to the plaintiff upon the execution of her deed in January, 1872, and certainly not later than March, 1884, when appellant, D. H. Dotson, entered on the land under a deed from appellee's vendee and under some arrangement for possession with the holder of the life estate.

On the cross-appeal of Elizabeth Dotson's administrator little need be said; her husband, G. D. Dotson, survived her, and under the statute in effect in 1884 when he conveyed this land to appellant and he and his wife gave him possession thereof, the husband was entitled to the rents from his wife's land unless the same was set apart to her by some instrument as her separate estate. It seems therefore that as the husband, G. D. Dotson, was entitled to the rents on his wife's property during their joint lives, he having survived her, no right could have descended from Mrs. Dotson to her personal representative. General Statutes, chapter 52, article 2, section 1.

For the reasons indicated the judgment on the original appeal is reversed, with directions to enter a judgment dismissing the plaintiff's petition; and the judgment is affirmed on the cross-appeal.