CASE 12—PETITION EQUITY—MARCH 6.

# Hargis, &c., v. Sewell's Administrator.

APPEAL FROM FAYETTE CIRCUIT COURT.

1. LIMITATION.—Our statute of limitations applies to all actions, whether at law or in equity, and the chancellor can exercise no discretion on the subject, but must apply the statute when properly pleaded, although the jurisdiction over the subject-matter belongs exclusively to a court of equity.

2. SAME—TRUSTS.—While it is expressly provided that the statute shall not apply "in the case of a continuing and subsisting trust," this exception applies only where one has the right to *use or hold* the estate as trustee for another, the latter occupying all the while the position of *cestui que trust*, and, therefore, does not apply to an administrator after he has settled his accounts, and the distributive share of the heir has been ascertained.

3. SAME—ADMINISTRATORS.—An action upon the bond of an administrator is barred after the lapse of fifteen years from the time the cause of action first accrued, the limitation of fifteen years applying to the obligor and that of five years to his surety; and the action upon the *express* undertaking for the faithful discharge of his duties being barred, there can be no liability by reason of an *implied* undertaking to perform similar duties.

4. SAME—HUSBAND AND WIFE.—The fact that an heir was a married woman at the time the administrator settled his accounts did not prevent the statute from running against her as soon as the settlement was made, as the husband in right of the wife, or in his own right, could have receipted for and collected his wife's distributable share at any time after the settlement.

5. Same—New Promise.—An acknowledgment of a debt, to take the case out of the statute of limitations,' must be made, not to a mere stranger, but to the creditor, or some one acting for him.

BRONSTON & KINKEAD and HARGIS & EASTIN for appellants.

1. The statute of limitations does not begin to run against a married woman until after she shall have become discovert. (Gen. Stats., chap. 71, art. 4, sec. 2.)
2. The statute does not apply to an express trust, and a subsisting and continuing trust is an express trust. (Pomeroy on Remedies and Remedial Rights, sec. 171; Bohannan v. Streshley, 2 B. M., 438; Pomeroy on Trusts, sec. 863.)

BRECKINRIDGE & SHELBY and WM. LINDSAY for appellee.

The relation of administrator and distributee is not such a trust as falls within the inhibition of the running of the statute of limitations. (Jackson v. Bourbon Justices, 2 Bibb, 292; Commonwealth v. Hammon, 10 B. M., 64.)

CHIEF JUSTICE PRYOR delivered the opinion of the court.

William Sewell died in the county of Breathitt in the year 1855, leaving his widow Emaline surviving him, and several children. His father, Thomas Sewell, administered on his estate, and, as is alleged, made a final settlement of his accounts as such with the judge of the Breathitt County Court in June, 1859, showing a balance due the children and widow of six thousand four hundred and forty-seven dollars that was approved and confirmed. Some years after this settlement was made the records of the court were destroyed, and all evidence of the settlement rested in the recollection of those who aided in making it. Thomas Sewell, the administrator, lived in the same county for years, but prior to the present controversy had removed to the county of Fayette. He was a man of considerable means, and having a large estate to manage, and being advanced in years, made in the year 1882 a deed of

trust of all his estate to Wilgus, of Lexington, giving to the latter the control thereof, retaining an ample support for himself and wife during life, and at his death the trust to terminate, and his estate to pass by descent to his heirs in the manner provided by the statute. He died in the year 1882, and the present appellee, who is his administrator, filed this petition in equity for a settlement of his estate, making his children defendants.

After the death of Wm. Sewell his widow, Emaline, married the appellant, John S. Hargis. The marriage took place prior to the year 1859, when the settlement was made by Thomas Sewell in the county of Breathitt of his son's (William) estate.

John S. Hargis and his wife (formerly the widow of William Sewell), Emaline, and some of her children by her first husband, filed an answer in this suit by Thomas Sewell's administrator, alleging the settlement made in 1859, and claiming the balance due on that settlement of six thousand four hundred and forty-seven dollars, with the interest, asking judgment for that amount against Thomas Sewell's administrator.

The making of the settlement was denied by the administrator, and also a denial of any indebtedness whatever, with the plea of the statute of limitations interposed as a bar to the recovery.

The alleged settlement made in the year 1859 having been destroyed, it appears that after the institution of the present action, viz., in January, 1884, by proceedings in the county court, the lost or destroyed record was supplied by the appointment of a commissioner, who reported from the evidence before him

that a settlement was made in the year 1859, showing a balance in the administrator's hands for distribution of six thousand four hundred and forty-seven dollars as of that date.

Whether the administrator had notice of this motion to supply the record does not appear; but whether so or not, the county judge swears that the settlement was made, and the balance reported by the commissioner was the amount found due on the settlement made by him with Thomas Sewell as the administrator of his son.

There is conflicting testimony as to the character and value of the estate passing into the hands of the administrator, and after the lapse of so many years, it must necessarily be uncertain as to the value of the assets of William Sewell's estate that passed to his administrator, or the amount for which he was properly chargeable. We will assume, however, for the purposes of this case, that such was the condition of the estate in the year 1859. Whilst this case was progressing in the court below, the claim of several of the children and grandchildren was withdrawn by a compromise effected between them, and the only question presented now arises as to the claim of the widow, the appellee insisting that her claim, if any existed, is barred by the statute. It is claimed, first, that this balance on the settlement of 1859 was a trust fund in the hands of the administrator, and for that reason the statute of limitation is not an available defense. Secondly, that the widow Emaline having married John S. Hargis, who is now living, prior to the year 1859, she has been under the disability of coverture

during the entire period, and, therefore, the statute does not run against her; and lastly, that the acknowledgment by Thomas Sewell of his indebtedness avoids the statutory bar.

Courts of equity in this State, prior to the adoption of the Revised Statutes, assumed the power, and properly, to apply the statute of limitations to cases of exclusively equitable cognizance, although the old statutes by their terms applied alone to actions at law; but now the statute of limitations applies to all actions, whether at law or in equity, and the chancellor can exercise no discretion on the subject, but must apply the statute when properly pleaded, although the jurisdiction over the subject-matter belongs exclusively to a court of equity.

There are cases where the statutory time can not operate as a bar, and an exception is found in the statute in relation to a continuing and subsisting trust. Section 20 of article 4, chapter 71, General Statutes, entitled Limitation of Actions, provides: "The provisions of this chapter shall not apply in the case of a continuing and subsisting trust, nor to an action by a vendee of real property in the possession thereof to obtain a conveyance.

The reason that the statute does not run in such a case is, that the *cestui que trust* has no right to sue the trustee and recover the trust fund; but whenever the right of action exists, there is no reason why the trustee may not rely on the statute, if the time has run, as a bar to the recovery, for when the right of action accrues the trust terminates. It is true, the manner of holding and the continued recognition of

the trust might prevent the statute from running, and in cases of express trusts, where the title is in the trustee, or where the party is holding as the agent of the rightful owner, there must exist such facts as show an open renunciation of the trust brought home to the *cestui que trust* before the statute begins to run. (Hendrick, &c., v. Robinson, &c., 7 Dana, 165; Bohannan's Heirs v. Sthreshley's Executors, 2 B. M., 437.) The statute of limitations in express terms disposes of the question presented in this case. Section 1 of article 3, chapter 71, General Statutes, provides: Civil actions other than those for the recovery of real property shall be commenced within the following periods after the cause of action has accrued, and not after: * * * ; "an action upon the official bond of a sheriff, marshal, clerk, * * * personal representative, guardian, committee or a trustee appointed by a court or authority of law, * * * shall be commenced within fifteen years after the cause of action first accrued."

In this case the settlement was had in the year 1859, and the widow at that time had an independent cause of action against Thomas Sewell for her distributable share of the balance found due on the settlement. Nearly twenty-five years elapsed from that time until this claim was asserted by the appellants, and not until after the death of Thomas Sewell, and then the claim was for the first time asserted against his personal representative.

The period of fifteen years bars any recovery on the bond from the time the cause of action accrued to the widow. Her second marriage with John S. Hargis, her co-appellant, did not prevent the running of the statute, although that took place before the year 1859.

The husband in right of the wife, or in his own right, could have settled, receipted for, and collected this money at any time after the settlement. He was entitled to this fund by reason of the marriage, and the statute began to run as soon as this settlement took place.

There is no reason, therefore, for holding that the coverture of the wife operated to prevent the running of the statute, when at no time during the twenty-five years next preceding the institution of this action were the parties precluded from suing, even at law, to recover of Thomas Sewell the widow's distributable share of the estate.

It can not be said that, while no action can be maintained on the bond of the personal representative, he may be sued as a mere naked trustee, holding this fund for the benefit of the widow. If he is not liable upon his written obligation to pay this money and discharge faithfully his duties as administrator, we can not well see in what manner a personal liability can arise by reason of an implied undertaking to discharge similar duties. The bond is required to be executed with surety for the faithful performance of the trust, and on this bond the appellants must proceed, with the limitation of fifteen years applying to the principal obligor, and five years to his surety from the time the cause of action accrued. (Section 3 of article 6, chapter 71, General Statutes.)

It matters not how just the claim after the lapse of twenty-four years, no action ought to be allowed to be maintained unless in the case of a continuing existing trust, where the one has the right to use or

hold the estate as trustee for the benefit of another, the latter occupying all the while the position of *cestui que trust.* This rule could not have been applied to an administrator regardless of the present statute, as he was never considered as such a trustee after the settlement of his accounts and the distributive share of the heir ascertained. The heir then had the right to sue for his distributive share at law, and the statute would run from the accrual of the cause of action. (App v. Driesback, 21 American Decisions, page 451, and cases there cited.)

It is urged lastly that the appellee's intestate, by his repeated acknowledgment of the liability, has kept the trust alive, and, therefore, the chancellor erred in dismissing the cross-petition of the widow. The effort in this case is to create a personal liability by reason of a subsequent promise that either excluded the running of the statute up to the date of the promise, or being made after the bar was such a promise as enabled the party to recover upon it. It is manifest from the testimony in this case that no promise was ever made to the widow or to her second husband to pay this debt, or any acknowledgment even, to either of them, that evidenced such a promise. The acknowledgment seems to have been made to third parties, who were neither the agents of the widow, or interested in the result, and is at best unsatisfactory in its character, and not such as should create an obligation to pay after the lapse of near a quarter of a century, without any reason for the failure to assert the claim at an earlier date.

Whether the promise to pay was before the running

of the statute or after the bar, it must be made to the creditor or to some one authorized by the creditor to treat with the debtor as his agent in the transaction. Judge Story says "that an acknowledgment of a debt to take the case out of the statute of limitations, or bar by lapse of time, must be made not to a mere stranger, but to the creditor or some one acting for him, and upon which the creditor is to act and confide." (Story's Equity, 1521; Trousdale's Adm'r v. Anderson, 9 Bush, 276; McKinney v. Snyder, 78 Penn. St., 497; Carroll v. Forsyth, 69 Illinois, 127; Niblack v. Goodman, 67 Indiana, 174.)

It appears that the widow received from the appellee's intestate one thousand dollars. That her first husband was a man of only limited means, and was aided in his business affairs by his father, who seems to have been not only independent, but was in fact a man of much wealth at the time he administered, and so continued up to the time of his death. He had no motive to defraud his son's widow or his grandchildren, but, on the contrary, seems to have been providing for them by gifts of property prior to his death, and, by the deed of trust executed in the year 1882 to Wilgus, made the grandchildren equal participants in the distribution of his estate with their uncles and aunts, giving to them what would have been their father's part of the estate. No claim was at any time asserted by the widow and her second husband for this money during the life of the appellee's intestate, and after such a lapse of time, with the nature of the delay unexplained by any fact, and no obstacle in the way of proceeding to make the money, the court must necessarily apply the statute as a bar to so stale a claim.

The judgment below is affirmed.