# Tucker v. Aetna Casualty & Surety Co.

(Decided Nov. 23, 1937.)

F. DOUGLASS CURRY and BACON MOORE for appellant.

LOUIS SEELBACH and CRAWFORD, MIDDLETON, MILNER & SEELBACH for appellee.

Opinion of the Court by Creal, Commissioner—
Affirming.

In 1894, E. W. Tucker, who had formerly resided in the state of Texas, came to Anderson county, Ky., where he lived for something over one year, and while there was married to one Elizabeth Edington. He left her a few months after their marriage and went back to Texas, and never returned to her, but as a result of that union, a son, Norman Tucker, was born. Some time later, and while the son was very young, Elizabeth Tucker died, and her mother, Mrs. Mary Edington, took the child to her home and reared him. Norman Tucker enlisted in the World War and took out a $10,000 war risk insurance policy, naming his grandmother, Mrs. Mary Edington, as beneficiary. He was killed in action on October 29, 1918, and Mrs. Mary Edington drew the monthly benefit under the policy until her death some time in the year 1925.

On July 24, 1926, James F. Edington, a son of Mary Edington, and uncle of Norman Tucker, was duly appointed and qualified as administrator of the latter in the Anderson county court with the Aetna Casualty & Surety Company as surety on his bond. He received from the federal government the sum of $7,316 as a balance due on the war risk insurance policy.

On June 16, 1927, a maternal relative of Norman Tucker brought suit against the administrator and other maternal relatives of the decedent for a settlement of the estate, alleging that E. W. Tucker, father of decedent, who was a resident of Kentucky, had left the state about the year 1895, had never returned, and nothing had been heard from him or known as to his whereabouts. He alleged that he and the other maternal relatives of Norman Tucker were the only heirs at law of decedent, and prayed that it be adjudged that E. W. Tucker was dead, and that the estate be distributed to the heirs at law of decedent as set out in the petition.

On June 16, 1927, and after evidence had been heard, judgment was entered granting the relief sought in the petition, and on July 15, 1927, the administrator made a final settlement showing that after payment of costs of administration, etc., the estate of Norman Tucker had been distributed in conformity with the judgment of the circuit court. No exceptions having been filed to the settlement, it was duly confirmed.

On July 10, 1936, E. W. Tucker instituted this action in the Anderson circuit court against J. F. Edington, as administrator and individually and against the other maternal relatives of Norman Tucker who were parties to the suit to settle his estate and to whom distribution had been made, and against the Aetna Casualty & Surety Company, as surety on the administrator's bond, seeking to have the judgment rendered in that action set aside as void, and that he be adjudged to be the sole heir and nearest of kin of Norman Tucker at the time of the death of Mary Edington, and that the settlement be surcharged to the extent that it include payment to him of the total estate of Norman Tucker over and above the just and lawful costs of administration; and for a judgment against the administrator and surety and the heirs at law for the sums distributed to the maternal relatives of Norman Tucker by the administrator. It was alleged in the petition, in effect, that the judgment in the suit to settle Norman Tucker's estate was procured through fraud and collusion between the administrator and the maternal relatives of decedent in alleging and making it to appear that E. W. Tucker had left the state and had never returned or been heard from, when in fact and in truth they knew he was living, and were advised as to his whereabouts. The petition sets out at length facts and circumstances relied on to show such knowledge on their part which it is unnecessary for the purpose of this appeal to enumerate.

The first paragraph of the separate answer of the Aetna Casualty & Surety Company consisted of a general denial of the allegations of the petition, and by a second paragraph it interposed a plea of limitation. The court overruled plaintiff's demurrer to the second paragraph of that answer, and he declining to further plead it was adjudged that his petition be dismissed and that he take nothing thereby, and he is appealing from that judgment.

As will be seen, the only question presented for decision is whether the cause of action attempted to be pleaded by appellant was barred by limitation. Counsel for appellant argue in effect that the liability of the surety is that of the principal, and that cause of action did not accrue against the surety before it accrued against the principal, and that limitation did not begin to run under the statute, which is the embodiment of

the common law, in favor of either the principal or the surety until the discovery of the fraud.

Sections 2514, 2515, and 2519 of the Statutes are cited and relied on. Section 2514, in so far as is pertinent, reads:

"An action upon a * * * bond * * * of * * * any commissioner, receiver, curator, personal representative, guardian * * * shall be commenced within fifteen years after the cause of action first accrued." Section 2515, among other things, provides that:

"An action for relief on the ground of fraud or mistake, * * * shall be commenced within five years next after the cause of action accrued."

And section 2519 provides:

"In actions for relief for fraud or mistake, or damages for either, the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake; but no such action shall be brought ten years after the time of making the contract or the perpetration of the fraud."

Counsel for appellee are relying on section 2550 of the Statutes, which reads:

"A surety for an executor, administrator, guardian, or curator, or for a sheriff to whom a decedent's estate has been transferred, shall be discharged from all liability as such to a distributee, devisee, or ward, when five years shall have elapsed without suit, after the accruing of the cause of action, and after the attaining of full age by the devisee, distributee or ward; but the failure to commence action in time by one shall not affect the right of another."

It is quite apparent from the sections of the Statutes referred to by counsel for respective parties, and others to which we shall presently refer, and the construction placed upon them by courts in numbers of cases, that sections 2514, 2515, and 2519, nor any of them, have any application in this instance.

In the case of Hargis et al. v. Sewell's Adm'r, 87 Ky. 63, 7 S. W. 557, 560, 9 Ky. Law Rep. 920, decided March 6, 1888, a settlement had been made by the administrator in 1859 showing a balance of $6,447 due the widow and children of the decedent. In 1884, an action

was instituted to recover the balance due as shown by the settlement. With reference to the plea of limitation, it is said in the opinion:

"The bond is required to be executed with surety for the faithful performance of the trust, and on this bond the appellants must proceed, with the limitation of 15 years applying to the principal obligor, and 5 years to his surety from the time the cause of action accrued. Section 3, art. 6, c. 71, Gen. St."

Section 2514 of our present statute was carried in the General Statutes in 1888, except in so far as it had been amended by Act of 1918, chapter 132, page 562; the above-quoted excerpt therefrom being the same. Article 6, chapter 71 of the General Statutes, referred to in Hargis v. Sewell's Adm'r, supra, is the same as article 6, chapter 80, of our present statutes relating to sureties under judgment, bonds given in the course of judicial proceedings, bonds of administrators, etc., and sureties on any obligation or contract other than those above referred to; and section 3 of the article and chapter of the General Statutes referred to in that opinion is the same as section 2550, Kentucky Statutes. It also was held that when the distributable portion of the estate had been ascertained by the settlement, any heir had the right to sue for his distributable share, and the statute of limitation would run from the accrual of the cause of action. To the same effect, see Schwerman v. Commonwealth, 99 Ky. 296, 38 S. W. 146, 18 Ky. Law Rep. 585; Grant County Building & Loan & Savings Association v. Lemmon, 78 S. W. 874, 25 Ky. Law Rep. 1725; Commonwealth v. Sammons, 180 Ky. 403, 202 S. W. 885; United States Fidelity & Guaranty Company v. Shields, 157 Ky. 371, 163 S. W. 203.

As shown by the foregoing opinion, the conclusion is inescapable that appellant's cause of action accrued against both the principal and the surety when the settlement was made on July 15, 1927, and the statute began to run from that date. However, it is maintained by counsel for appellant that even if section 2550 of the Statute applies, limitation did not begin to run until the discovery of the fraud as provided in section 2519 of the Statute.

Section 2552, which is included in article 6, chapter 80, of our present statute, provides, in so far as pertinent:

728

"The limitations given in the next four preceding sections shall not apply to so much of the time elapsed when there was no executor, administrator or other person authorized to commence an action, nor to the six months during which an action can not be brought against a personal representative; nor to any delay assented to by the surety, in writing. * * * And if such surety shall abscond, conceal himself, or by removal from the state, or otherwise, obstruct or hinder his being sued, the time of such obstruction shall not be computed as part of the time of limitation in said sections allowed."

In Schwerman v. Commonwealth, supra, it was held that section 2552 prescribed the only conditions or acts that will operate to suspend the running of limitation as provided in section 2550 which relate to sureties on bonds and other obligations, as above indicated. That case was cited and quoted with approval in Grant County Building & Loan & Savings Association v. Lemmon, supra. It is therefore manifest that none of the alleged conduct upon the part of the administrator or other parties to the suit for the settlement of Norman Tucker's estate would operate to suspend the running of the statute in favor of appellee as surety on the administrator's bond. Such suspension could only be effected by some of the acts or conduct enumerated in section 2552, and none of which are charged in the petition.

Judgment affirmed.