## Blades v. Blades' Adm'r.

Feb. 17, 1942.

J. Gordon Lisanby and R. W. Lisanby for appellant.
Marshall P. Eldred for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

Will A. Blades died intestate August 8, 1939, and left surviving him his widow, Mrs. M. E. Blades, the appellant, and six children by a former marriage. About a week after his death the widow went, or was taken by some of the children, to the court house to have an administrator appointed, and the Farmers National Bank of Princeton, Kentucky, was appointed in that capacity.

Shortly thereafter the appraisers appeared with the children to appraise the property. As the widow owned a few household articles in her own right, these were placed in one room of the house and everything else in the home, including furniture, bed clothing, all food on hand and cooking utensils, was placed in another part of the house, and some of the canned food locked up in the cellar by the appraisers. Other personal property of the estate consisted of farm tools and equipment of little value and one cow. The entire personal estate was sold at public auction for the sum of $107.57.

There being a funeral bill of about $180 and no other

money available, the administrator then filed suit to sell the real estate consisting of four tracts, three of which were in the home place and one about four miles distant. This suit also asked that the widow be paid the value of her dower interest in cash.

Mrs. Blades then employed an attorney to set up her claim of homestead. This claim was allowed by the court in the three tracts containing the home place and the fourth ordered sold to pay the funeral expenses, debts and costs of administration.

Before any further steps were taken in this action, the widow instituted a separate suit against the administrator, individually, alleging that she was entitled to an exemption in the personal estate of her deceased husband to the extent of $750 and that by reason of its wrongful and illegal acts in permanently depriving her of this exemption she had been damaged in the sum of $1,000. She further alleged that it had been necessary to employ an attorney in the first suit to obtain her homestead in the real property and that she was entitled to a fee of $50 for his services in that action.

The administrator answered and alleged that the funeral bill was a preferred claim against the estate by reason of Section 3868 of the Statutes, prior and superior to all other claims against the estate including the claim of the widow's exemption; that it was its duty under the law to raise funds with which to pay this indebtedness; and that it had proceeded to discharge its duty pursuant to authority set out in Section 428 of the Civil Code of Practice. By agreement all affirmative matter in the pleadings was controverted of record.

On the trial the widow testified, in addition to the facts already stated, that she knew nothing whatever of her rights as a surviving widow; that, although she was present at the appointment of the administrator and attended the sale of the property and purchased a few articles, she voiced no objection to any of these proceedings because she was uncertain as to whether she had any rights; and that she was never properly advised of her rights by the administrator or anyone else until she employed an attorney. She further testified that the value of the articles sold was reasonably in excess of $360 exclusive of the cow which was sold for $60. Her testimony in this respect seems to have been based upon the

value of such articles as priced in a mail order catalogue. At the conclusion of her testimony the trial court peremptorily instructed the jury to find for the defendant and the widow has appealed.

The primary question to be decided is whether a widow's exemption allowed by Section 1403, Subsection 5, of the Statutes, is prior and superior to the claim of an undertaker, where the deceased's personal estate is insufficient to discharge both the claim and the exemption. A decision of this question must necessarily be based upon the construction of that section together with Section 3868 upon which the appellee relies here to support his contention.

It seems clear that the primary purpose of Section 1403 is to direct the manner in which, and to whom, the personal estate of an intestate shall descend in the event there is a surplus. The word "surplus" applies to that part of the estate, or assets, remaining in the hands of the administrator after the payment or allotment of some prior or superior claim, otherwise it would have no meaning and serve no purpose whatever in the statute. In this instance it simply means that part of the estate remaining after the payment of funeral expenses and other charges therein set out. All of these liabilities must be discharged before there is anything to pass or be distributed as directed by this section.

The fifth exception in this section provides for a widow's exemption and it applies, not only against the rights of heirs, but against funeral expenses, costs of administration and debts as well. It can not be contended that the heirs or debtors generally have a prior and superior claim over this exception and without express authority it can not be said that any one of the liabilities of the estate shall have preference over the other.

The exception applies to them all and the section of the Statutes which does prefer one over the other is Section 3868. There the personal representative is given authority to pay the burial expenses and other charges, which might otherwise be classed as any other debt, as a preferred claim against the estate. The general creditors, where the estate is insufficient to pay them all, must accept their pro rata share. Such is not the case with the undertaker by reason of this section and it is not in

conflict with Section 1403. It merely picks out of Section 1403 the funeral expenses and other charges and authorizes the personal representative to pay these claims in full before any pro rata distribution is made.

It must be noted that the fifth exception in Section 1403 further supports this construction by making it the duty of the appraisers to set apart the widow's exemption before sale. It must be conceded that a personal representative in any case would find it exceedingly difficult to pay funeral expenses, charges of administration and debts without first selling the property and where the statute specifically directs that the appraisers shall set apart a certain amount of the estate to the widow and exempt it from distribution and sale, it would seem to indicate clearly that it was never intended that household furniture, foodstuffs and the like, should ever reach the hands of the administrator and become a part of the estate subject to debts or distribution among the heirs.

It has been held several times by this Court that upon the death of a person intestate the property specifically exempted by statute from distribution and sale at once ceases to be a part of his estate, vests absolutely in the widow or distributees, as the case may be, and that it is the duty of the administrator to see that the exempted articles are set apart to them. Chism v. Chism, 2 Ky. Op. 461; Mallory's Adm'rs v. Mallory's Adm'r, 92 Ky. 316, 17 S. W. 737, 13 Ky. Law Rep. 579; Russell's Adm'r v. Russell's Guardian, 14 Ky. Law Rep. 236; Thompson v. Thompson, 117 Ky. 526, 78 S. W. 418, 25 Ky. Law Rep. 1626. In the case of Miller's Adm'r v. Miller's Ex'r, 7 Ky. Law Rep. 149, the Court said:

"The exemption is unconditional. The exempted property forms no part of the estate for distribution, but vests in the widow as widow, and can not be charged to her as a distributee in any state of case. * * *"

It is contended by the appellee that this Court is not called upon to construe either of these sections of the Statutes, on the point of funeral expenses, since this very question has been specifically decided in the case of O'Hara v. O'Hara's Adm'r, 182 Ky. 260, 206 S. W. 462, 463, wherein the Court said:

"It is urged, however, that the widow and infants having become, and being at the time of the at-

tempted assertion of this claim, nonresidents of this state, they do not come within the statute which exempts certain property to actual householders of this commonwealth. It has several times been held by this court that the right of a widow and infant children to property under this exemption vests eo instanti under Subsection 5 of Section 1403, Kentucky Statutes, and we apprehend that, having once vested in and become the property of the widow and infant children, a mere change of residence to another state would not operate to divest the widow and infant children of their right therein.

"From the Statutes it appears that the widow and infant children are entitled absolutely to an exemption of $750 to be set apart to them out of the estate of the intestate, and free from the claim of creditors and heirs. Such an exemption does not prevail over funeral expenses, and, had the administrator in his answer to Mrs. Belle O'Hara's cross-petition alleged that he had expended a given sum for funeral expenses in burying M. C. O'Hara, and supported such allegation by proof, such claim would have had precedence over the exemption claim of the widow and infant children. This he did not do, although he attempted to make such allegation."

It will be noted at the outset that the views expressed in these two paragraphs are inconsistent although the result reached is the same. Furthermore, it must be noted that the Court was not called on to consider Section 3868 in connection with the widow's exemption and nowhere in that case was the question of priority raised for the purpose of defeating the widow's rights. Since there is ample authority in this jurisdiction, some of which was cited by the Court in that opinion, to support the views expressed in the first paragraph, and none to support the statement, "Such an exemption does not prevail over funeral expenses * * *,'" such statement must give way to the cases to the contrary and the views expressed herein. To hold otherwise would have the effect of declaring Subsection 5 of Section 1403 inoperative, as well as giving to Section 3868 a meaning that it does not contain.

The trial court should have peremptorily instructed the jury to find for the plaintiff in the sum of $107.57

and her costs therein expended, the proof being insufficient to support any other judgment.

Judgment reversed, with directions to set it aside and to enter a judgment in conformity with this opinion.

Whole Court sitting.