## Moore v. Gaines.

June 15, 1948.

Rehearing denied October 29, 1948.

224

Henry Jackson and James G. Begley for appellant.
Jay W. Harlan for appellee.

OPINION OF THE COURT BY JUDGE KNIGHT—Reversing.

The sole question involved in this case is the title to a one-third interest in a city lot 50 feet by 103 feet on Leonard Court in Danville, Ky., fully described in the petition. Appellant is claiming title to this one third interest as a granddaughter and heir at law of E. F. Gaines who owned and held the record title to said lot upon his death in October 1924. Appellee claimed title to the property on several grounds, including adverse possession. From the judgment of the chancellor adjudging title to the property in appellee by reason of adverse possession, appellant prosecutes this appeal.

## The Facts in the Case

E. F. Gaines, called and generally known as "Bob Gaines," acquired title to the property herein involved, at that time a vacant lot, by deed dated July 14, 1922, for the recited consideration of $850 cash. At that time Mr. Gaines was 92 years of age and died two years later at 94 leaving surviving him three children, a son, Fisher D. Gaines, who was the only child by his second wife, Sarah Gaines, who had died in 1906, and two daughters, Sallie Moss and Ella Bruce, by his first wife who had died previous to his marriage to Sarah Gaines. During her lifetime Sarah Gaines acquired title to a tract of about 100 feet by 400 feet at the corner of Main and Alta in Danville and upon her death this property, not involved in this case, descended to her son, Fisher D. Gaines, subject to the curtesy interest of her husband, E. F. Gaines. By various deeds all the Main Street property was sold, the last one being sold by deed dated February 23, 1920, all these deeds being executed by E. F. Gaines, widower, and Fisher D. Gaines and his wife, Mamie C. Gaines, appellee herein. In the last deed a lien was retained for two deferred payment notes for $1875, each payable to Fisher D. Gaines, and on the margin of the deed is shown a release of this lien signed by both E. F. Gaines and F. D. Gaines and dated July 5, 1922. Just nine days after this release and on July 14, 1922, the deed to the then vacant lot involved in this case was taken in the name of E. F. Gaines. Shortly thereafter a house was erected on this vacant lot and on April 10, 1923, for the purpose of partly financing the construc-

tion of this house a mortgage on the property involved was executed to the Central Kentucky Building and Loan Association. This mortgage was for $1500 and was executed by E. F. Gaines. Fisher D. Gaines, but not his wife, signed and acknowledged this mortgage, it being stated in the mortgage that he joined in for the purpose of assuming the payment of this debt and to secure the payment thereof and to pledge and to assign to the mortgagee all shares in the Association owned or thereafter owned by him until the debt was paid. After the house was completed it was occupied by Fisher D. Gaines and his wife and son and E. F. Gaines who had lived with them just one year from October 1923 until he died in October 1924. It is also shown by the record that previous to moving to the new house Fisher D. Gaines and family and E. F. Gaines had lived together in the home place at Main and Alta, the last part of which was sold in 1920.

Fisher D. Gaines was killed by a train on October 11, 1927, and, having died intestate, all his interest in the property involved passed to his son, Robert C. Gaines, and his wife, Mamie C. Gaines. Upon the death of Robert C. Gaines, intestate and unmarried, in 1931, his mother, appellee herein, acquired all the title which Fisher D. Gaines had to the property. Appellee continued in possession of the property renting it out and treating it as her own until recently when she entered into a contract for a sale of the property for $7500 when the examination of the title disclosed that she had legal title to only a one third interest in the property. A quit claim deed was obtained from the heirs of Sallie Moss who had record title to one third of said property as a daughter of E. F. Gaines. Sarah Fisher Moore, who had record title to the other one third as the heir at law of Ella Bruce, daughter of E. F. Gaines, refused to sign a quit claim deed for her interest. By agreement of all parties $2500, or one third of the purchase price, is being held pending the final decision of this case as to whether the disputed one third interest belongs to appellant or appellee.

Appellee filed this suit against appellant seeking to have her title quieted and asking that it be adjudged that appellant had no interest therein. In her petition she alleged that the consideration for the lot involved

was paid by Fisher D. Gaines and that by inadvertence his father, E. F. Gaines, was named as the grantee in said deed; that Fisher D. Gaines built the house on said lot and paid for all the improvements erected thereon; that she and her deceased husband had occupied, controlled and rented this property since 1922. Appellant's demurrer to the petition was sustained.

Appellee by amended petition then alleged that by mutual mistake of grantor and grantee the deed was drawn to vest record title in E. F. Gaines instead of Fisher D. Gaines and further pleaded adverse possession for more than fifteen years against appellant. Appellant's demurrer to the amended petition was sustained.

Appellee then filed a second amended petition in which it was alleged that appellant had failed to lay any claim to the property since the death of her grandfather in 1924, and again pleaded adverse possession against her. Demurrer was filed to the second amended petition but apparently not passed on. Then a third amended petition was filed in which it was alleged that since the consideration was paid by Fisher D. Gaines and title taken in E. F. Gaines, a resulting or constructive trust was created in favor of Fisher D. Gaines and his heirs at law. It further pleaded that appellant was guilty of laches and by a fourth amended petition appellee again pleaded laches in a fuller, more complete form. The court sustained a demurrer to the third and fourth amended petitions except as to the paragraph which pleaded laches, which was overruled. The defendant, without waiving demurrers to the various pleadings, finally filed a lengthy answer denying the allegations contained in the petition and various amended petitions.

## The Question to be Decided

From the confused state of the pleadings, the motions to strike, the demurrers and the rulings thereon, it is a little difficult to determine just what is left in the pleadings as the basis of appellant's suit. But it appears that all that is left is the plea of laches² and adverse possession. Although demurrer had been sustained to the plea of a resulting trust, the chancellor further eliminated this ground when he said in his memorandum opinion:

228

"The testimony on behalf of plaintiff does not support the claim of a resulting trust. There is no competent testimony that Fisher Gaines furnished the consideration for the purchase of the lot. And even if he did, there is no evidence the title was taken in the name of his father without his consent. (KRS sec. 381.170; Wright v. Yates, 140 Ky. 283, 130 S. W. 1111; McFarland v. McFarland, 263 Ky. 434, 92 S. W. 2d 785.)"

We agree with the conclusions of the chancellor in his ruling on these points; that E. F. Gaines was not made grantee by inadvertence, or by mutual mistake, or that there was a resulting trust. At any rate, since there was no cross-appeal from the decision of the chancellor on these points, they must stand, right or wrong.

The sole basis of the chancellor's decision in favor of appellee was adverse possession as indicated in the remainder of his memorandum opinion in which he says:

"Disregarding the testimony to which the exceptions have been sustained, the proof for plaintiff shows that continuously since the death in 1924 of E. F. Gaines, this residence property has been in the exclusive possession of, first, Fisher Gaines, until his death in 1927, then of Robert Gaines and the plaintiff, as widow of Fisher, until Robert's death in 1931, and of plaintiff from then until the suit was brought. The evidence discloses that this possession throughout that time was under claim of complete ownership and hostile to any adversary claim, including any of defendant. The possession and the acts done thereunder make this clear. The badges that go only with complete ownership accompanied that possession—the payment of taxes, of insurance, the making of extensive and expensive repairs, the satisfaction of a purchase money lien on the property amounting to a considerable sum, the renting out of the property by plaintiff. The acts evincing the claim to proprietorship, exclusive and complete, were of such notoriety as to impute notice thereof to defendant. Actual notice was not necessary. (Wilcox v. Sams, 213 Ky. 696, 281 S. W. 832; Lake v. Ford, 244 Ky. 803, 52 S. W. 2d 724). And defendant must be regarded as having notice that when her grandfather died in 1924 the title to this property was in him, for the deed to him was then of record. The presumption that one joint tenant

holds possession amicably, and not adversely, as to cotenants in title, is one that may be repelled by evidence. (Greenhill v. Biggs, 85 Ky. 155, 2 S. W. 774, 7 Am. St. Rep. 579; Rose et al. v. Ware, 115 Ky. 420, 74 S. W. 188; Harrington v. Williams, 173 Ky. 575, 191 S. W. 273; Pope v. Brassfield, 110 Ky. 128, 61 S. W. 5.) This is the situation here.''

The sole question involved in this appeal, therefore, is the correctness of the chancellor's ruling on the question of adverse possession and more narrowly and specifically: May title be acquired by a joint tenant, who is such by inheritance, against another joint tenant, who is such by inheritance, by adverse possession under facts and circumstances as developed in this case?

### The Law of the Case

We start with two well settled principles of law, as set out in the case of Wilcox v. Sams, 213 Ky. 696, 281 S. W. 832, 833, in which this court said:

''Appellants and appellees unquestionably became joint owners of Sams' lands upon his death, and the rule is thoroughly established by the many cases cited in support thereof by counsel for appellants that the possession of one joint owner is presumptively the possession of all, and that to oust his cotenants his possesion must not only be of the adverse character required by law as against strangers, but such as to bring home to his cotenants notice that he is holding and claiming adversely to them. (Citing numerous cases)

''These cases, however, do not sustain the further contention of appellants that this notice must be actual although, in some of them the word actual is employed in stating the rule, since it is well settled, not only by the above cases, but more particularly those in which the precise question was involved, that the required notice may be actual or constructive and may be inferred or imputed from the acts and conduct of the one in actual possession. (Citing numerous cases.)''

In Miller v. Powers, 184 Ky. 417, 212 S. W. 453, 455, it is said:

''It is a well-established rule that one joint tenant can not acquire title by adverse possession against his

cotenants by mere possession, no matter how long continued, for he has a right to occupy the premises, and his occupancy thereof is not to be presumed to be hostile, but is presumed to be amicable and in harmony with his legal rights. In fact, the statute of limitations will not begin to run in favor of the cotenant in possession until notice of his adverse holding is brought home to his co-owners. While this may be accomplished by acts of such notoriety and conspicuousness as would be calculated to put ordinarily prudent persons upon notice of his adverse holding, the burden is upon the claimant to show such a disseizin and notice * * * In the absence of a contrary showing, the presumption is that a joint tenant is holding the common property for the joint use and benefit of himself and cotenants. May v. Chesapeake & O. R. Co., 184 Ky. 493, 212 S. W. 131.''

And in the case of Fordson Coal Co. v. Vanover, 291 Ky. 447, 164 S. W. 2d 966, 967, it was said:

''The chancellor was also correct in holding that the thirty-year statute had no application. Since, on the record before the chancellor, appellees were joint owners with appellant, such possession as appellant may have had of the land in controversy was also the possession of appellees. The possession by one tenant in common or joint tenant as such is the possession of his co-tenants also, and in the absence of proof to the contrary the presumption is that the possession was so held. Greenhill v. Biggs, etc., 85 Ky. 155, 2 S. W. 774, 7 Am. St. Rep. 579. Here there was no proof rebutting the presumption that the possession of appellant as joint owner was also the possession of its co-tenants, the appellees. Since the possession of appellant in the circumstances shown in this case was also the possession of appellees, no right of action existed until their possession was denied or knowledge of the adverse character of the possession by their co-tenant was brought home to them. This being true the thirty-year statute has no application.''

The cases involving the application of the above principles are numerous and it would unduly lengthen this opinion to analyze and distinguish them all. Each case was decided largely on the facts developed in the particular case as to whether or not the possession of

the tenant claiming adverse possession was of such character as to bring home to his co-tenant actual or constructive notice that he was holding and claiming adversely to him.

We cannot agree with the chancellor that the facts in this case were such as to constitute notice of adverse possession against the co-tenant either actual or constructive. Appellant was born in Missouri and has lived in Texas since 1907 and, so far as the record shows, never lived in Kentucky. She was informed of the death of her grandfather in 1924 but did not come to Kentucky and knew nothing of any property he may have left. Her first knowledge of any interest she had in the property was when she received the quit claim deed from appellee's attorney in November 1945, which she was asked to sign but refused. She later received the letter from the warning order attorney notifying her of this suit. The only constructive notice she had concerning the property was the deed by which her grandfather got title to the property in 1922. After that date there was no deed of division of any kind such as there was in the case of Wilcox v. Sams supra under which she might take constructive notice that claims adverse to her were being asserted by a co-tenant. Neither had there been a sale of all or part of the property to others from which appellant could take constructive notice of an adverse claim as there was in the case of Rose et al. v. Ware, 115 Ky. 420, 74 S. W. 188. The only instrument ever put to record after 1922 involving this property was the mortgage executed in 1923 to the Central Ky. Building & Loan Association executed by E. F. Gaines and in which Fisher D. Gaines joined, not as a part owner, but to guarantee payment of the loan. It is true that the evidence indicates that the balance due on the loan, about $1200, was paid off by appellee after the death of her husband, Fisher D. Gaines; that she made all necessary repairs to the property as needed and paid insurance and taxes thereon, and was renting out the property. But all the time she was doing this she had the free use of the property and was receiving all rents and proceeds therefrom. All these acts were badges of ownership that would impute knowledge of her claim to outsiders but not necessarily to a co-tenant. As was said in Am. Jur. Vol. I., page 819, Sec. 50:

"Every co-tenant has the right to enter into and occupy the common property and every part thereof, provided, in so doing, he does not exclude his fellow tenants or otherwise deny to them some right to which they are entitled as co-tenants; and they, on their part, may safely assume, until something occurs of which they must take notice, and which indicates the contrary, that the possession taken and held by him is held as a co-tenant and is, in law, the possession of all the co-tenants, and not adverse as to any of them. This proposition is based upon the supposition that the entry is made either eo nominee as tenant in common, or that it is silently made without any particular avowal in regard to it, or without notice to a co-tenant that it is adverse. There can be no adverse holding against a co-tenant who does not know that he has an interest in the land."

One of the cases cited in support of the above text is that of May v. Chesapeake & O. R. Co., 184 Ky. 493, 212 S. W. 131, 138. In that case this court said:

"In order that one of several cotenants may acquire title by adverse possession as against the others, his possession must be of such an actual, open, notorious, exclusive, and hostile character as amounts to an ouster of the other tenants. Acts of ownership by one cotenant do not within themselves actually amount to the disseizin of the other cotenants; indeed, they may be so explained as to show a consistency with the joint title. Generally, a cotenant's sole possession of the land becomes adverse to his fellow tenants by his repudiation or disavowal of the relation of cotenancy between them; and any act or conduct signifying his intention to hold, occupy, and enjoy the premises exclusively, and of which the tenant out of possession has knowledge, or of which he has sufficient information to put him upon inquiry, amounts to an ouster of such tenant. * * *"

Appellant did not know that she had any interest in the property involved until she was asked to sign a quit claim deed to her interest and there is nothing in the record to show that she had any knowledge actual or constructive that her co-owners were claiming title adverse to her.

Other recent cases denying adverse possession of one co-tenant against the other are Whitaker et al. v.

Langdon et al., 302 Ky. 666, 195 S. W. 2d 285; Cary-Glendon Coal Co. v. Warren, 303 Ky. 846, 198 S. W. 2d 499, and Hannah et al. v. Littrell et al., 304 Ky. 304, 200 S. W. 2d 729, in which cases there are references to many previous cases.

For the reasons given herein the judgment of the lower court is reversed.

Judgment reversed.

Judge Rees not sitting.