Edith WOOD, Appellant,

v.

Curtis WINGFIELD, Appellee.

Curtis WINGFIELD, et al., Appellants,

v.

Edith WOOD, Appellee.

Nos. 89–SC–935–DG, 89–SC–968–DG.

Supreme Court of Kentucky.

June 6, 1991.

As Modified on Denial of Rehearing
Sept. 26, 1991.

Robert B. Wade, Rueff & Schreiner, Morgantown, for appellant/cross-appellee Edith Wood.

Richard J. Deye, Deye & Browning, Morgantown, for appellee/cross-appellants Curtis Wingfield, et al.

ANN B. OLDFATHER, Special Justice.

This appeal is from a decision of the Court of Appeals which affirmed a Judgment of the Butler Circuit Court upholding a jury verdict that Edith Wood was a child, and therefore an heir, of the decedent, Columbus Johnson, Jr., and which further affirmed the trial court's determination that a portion of Wood's claim was barred by the statute of limitations. We affirm the jury verdict determining Wood to be an heir, and we affirm in part and reverse in part the result reached by the Court of Appeals on the applicable statutes of limitation.

By this Opinion we reach the issue not resolved in *Ellis v. Ellis*, Ky., 752 S.W.2d 781 (1988), e.g., the appropriate statute of limitations faced by an illegitimate heir claiming an interest in an estate. For the purposes of determining that issue, we consider a child's legitimacy to be irrelevant. It is beyond dispute that an illegitimate child has exactly the same rights to inherit as does a legitimate child, *Ellis v. Ellis, supra, Fykes v. Clark*, Ky., 635 S.W.2d 316 (1982), *Pendleton v. Pendleton*, Ky., 560 S.W.2d 538 (1977) and *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). Resolution of this issue requires instead an attempt to decipher and read harmoniously the laws applicable to descent and distribution, rights of action for the contesting of estates and the murky waters of statutory periods of limitation. Neither party has cited to us any case law or statute specifically addressing the issue of how and when *any* omitted heir (illegitimate or not) can establish his or her claim to an estate. Our research has not uncovered any cases where this issue was squarely presented as the dispositive point[1]. In *Ellis v. Ellis*, we decided only

---

[1]. *Wilcox, et al. v. Sams, et al.*, 213 Ky. 696, 281 S.W. 832 (1926), discussed more fully below, discusses application of the limitations period of KRS 413.010 to an intestate's real estate but no holding was required to dispose of the appeal since it was found that any limitations period had been tolled during coverture. In several other cases (discussed below) it was *assumed*

that neither the time bar for a paternity action provided in KRS 406.031, nor the time bar in KRS 396.025 attributable to claims arising "before" the death of the decedent, were applicable in a declaratory judgment action filed within three years of the decedent's death by a person claiming to be an illegitimate child and sole heir of the decedent. We now conclude that no limitation begins to run on the intestate inheritance of real property until there has been an "ouster", after which the fifteen year limitation period of KRS 413.010 applies, that the statute of limitations for the inheritance of personalty begins to run upon the death of the decedent and that the "catch all" ten-year limitation period of KRS 413.160 applies to that claim. It should be noted that this holding applies to *all* heirs.

Columbus Johnson, Jr. died intestate on May 27, 1977. On June 25, 1977, Curtis Wingfield was appointed administrator of the estate. Certain persons, joined as parties to this action with Wingfield (all of whom are collectively referred to as "Wingfield" for purposes of this Opinion), were listed on the petition for the appointment of an administrator as heirs of Columbus Johnson, Jr. The estate consisted of both real and personal property. On March 27, 1984, Wingfield filed the final settlement for the estate, and the final settlement was approved by the Butler District Court on May 3, 1984. The personalty was distributed to the heirs named on the petition for appointment and title to the real estate passed to the named heirs.

On July 31, 1985, eight years after Johnson's death, Edith Wood filed this action in the Butler Circuit Court claiming that she was an illegitimate child of Columbus Johnson, Jr., stating that she had received no interest in the estate and requesting that the estate be reopened. The defendants were the heirs, their spouses and Wingfield, who was named both as an heir and as the former administrator. The attorney

for Appellee/Cross–Appellants appeared for all Defendants. A jury trial was held on the question of whether Wood was a child of the decedent. On August 21, 1987, the jury returned a verdict declaring that Wood was the child of the decedent. Judgment was ultimately entered upon this verdict. The trial court then concluded that certain of Wood's claims against the estate were barred by the statute of limitations. The trial court held that any statute of limitation should run from the date of appointment of the administrator, that KRS 413.010 provided a fifteen year statute of limitations with respect to the realty, and that KRS 413.120(2) provided a five year statute of limitations with respect to the personalty. Accordingly, the trial court entered a judgment in Wood's favor awarding her a share of the decedent's real estate, but declined to enter a judgment with respect to the personalty since Wood's claim in that regard was found to have been barred. Wingfield and Wood both appealed. The Court of Appeals affirmed the trial court on both the appeal and the cross-appeal.

■ We will deal first with the question of the statute of limitations. Wood's claim arose only upon the death of Columbus Johnson, Jr., *Ellis v. Ellis, supra.* The claim did not exist prior to the death of Columbus Johnson, Jr. since he could have at any time executed a Will and obviated any considerations of intestacy. This is as true for a legitimate heir as it is for an illegitimate child. KRS 391.010 provides that the real estate of an intestate decedent descends first to "his children and their descendants ..." KRS 391.010(1). KRS 391.030 provides that the personal property of an intestate decedent shall, after payment of funeral expenses and costs of administration and debts, descend in the same order as the real estate, with certain exceptions not here applicable.[2] While the same class of persons inherit both the real and the personal property, there is a material

that KRS 413.010 was the appropriate limitations period when dealing with claims among descendants, but again the question was never squarely addressed.

2. Exempt property, in specified statutory amounts, vests immediately upon the death of the decedent, *Blades v. Blades Adm'r.,* 289 Ky. 556, 159 S.W.2d 407 (1942), KRS 391.030.

difference in the manner in which the two types of property descend. Deeply embedded in Anglo–American law is the concept that upon the death of an intestate, real property vests immediately in those persons entitled to inherit same from the decedent. The administrator of the decedent's estate has little or nothing to do with real property. In J. Merritt, 1 *Kentucky Practice*, § 73 (1984), this proposition is stated as follows:

"Although the same persons inherit the real property and personal estate of an intestate—using 'inherit' in its strict sense—the two types of property pass by different methods. Real property descends directly to the heir, whereas personal property goes to the personal representative to be distributed by him."

This proposition is elaborated in J. Merritt, 2 *Kentucky Practice*, § 1341 (1984) as follows:

"The so called 'assets of the estate' or 'probatable assets' consist of all the property which passes to the personal representative to be administered for the benefit of those interested in the estate. These assets must be contrasted with 'nonprobate assets' which do not come into the hands of the personal representative but which pass directly to the heir or beneficiary. A classic example of a nonprobate asset is land which passes directly to the heir or devisee. Land, of course, may be made into a probate asset by the testator through a suitable provision in the will." *Id* at 213.

R. Noe, *Kentucky Probate Methods*, Chapter 2, § 2.0 (1976), is of a similar view:

"Not all of the property in which the decedent had an interest, however, will constitute probate property over which the personal representative has control. Real property owned solely by the decedent, for example, passes directly to the decedent's heirs or devisees upon his death...." *Id.* at 47.

Decisional law directly supporting the proposition stated by the text writers may be found in *Edinger v. Finn's Administrator*, Ky., 252 S.W.2d 47, 49 (1952), "Ordinarily, the title to the personal property of an intestate vests in the administrator, while the title to the real estate vests in the heirs (Citations omitted)." This case also notes that, if necessary, it is the heirs who must sue to recover the real property of the intestate. In accord is *Hall's Executors v. Robinson*, 291 Ky. 631, 165 S.W.2d 163 (1942).

In contrast with the rule of law which denies the personal representative authority over real property is the rule which expressly grants the personal representative authority to collect, manage and dispose of personal property. KRS 395.195.[3] The authority of the personal representative with regard to personal property is well stated in *Moore's Administratrix v. Brookins*, 263 Ky. 519, 92 S.W.2d 813 (1936), quoting *Burchett v. Burchett*, 226 Ky. 5, 10 S.W.2d 460 (1928) as follows:

"Title to the personal property of a decedent vests in his personal representative for purposes of administration, and devisees or heirs acquire no title to it until there has been a settlement of the estate." 92 S.W.2d at 813–14.

From the foregoing authorities, it is plain that title to real estate owned by an intestate passes directly to the heirs by virtue of KRS 391.010. This is true whether those heirs are legitimate or illegitimate. Title to the intestate's real estate vests in the persons designated by KRS 391.010 as a matter of law upon the death of the decedent. On the other hand, title to personal property must first pass through administration, and does not descend directly to the statutorily designated heirs as does real property. While we would prefer to treat both real and personal property similarly, we cannot ignore the plain difference between the two types of properties and the method by which the property descends

---

**3.** Parenthetically, section (6) expressly denies the personal representative any right to acquire or dispose of land. The personal representative has no inherent power to sell real property to pay debts, even when the personal estate is

insufficient, *Buckner's Executors v. Cromie's Executors*, 68 Ky. 603 (1869). The conditions of KRS 395.515 must be met before real property is sold.

to the heirs. In the complete and total absence of any legislative enactment establishing the procedure and the limitations period for heirs to assert their claims against intestate estates, we must recognize the profound differences between both types of properties in answering the question presented.

■ The determination of the appropriate period of limitations is more difficult. The concern for an expedient resolution of claims, by which questions of title can be foreclosed, estates can be settled and heirs can know that the property received is, in fact, theirs to enjoy, all point toward a relatively short period within which claims for inheritance should be filed. There is no doubt that the inheriting public would be best served by a short period of limitation. On the other hand, rightful heirs, be they children, siblings, parents or spouses, are the persons *entitled* to the intestate's property. Their presence is not always known, nor is it always easily ascertainable. The desire to protect rightful claims points toward longer periods of limitation. It is not, however, for this Court to make such policy decisions but is rather within the province of the legislature. It is the duty of the legislature to weigh these competing concerns, determine issues of notice to omitted heirs and resolve the conflicting demands presented by the various interests involved. It is the duty of this Court, whenever possible, to work within the statutory framework enacted by the legislative branch. To the argument that we are casting clouds on titles and creating confusion and uncertainty in the finality in the administration of intestate estates by this Opinion, we respond that the field has been rife with uncertainties for as long as cases have been reported and laws recorded. The simple fact that there is no express legislative intent establishing the time within which an intestate heir must come forward and assert his claim or be barred speaks eloquently of the confusion facing the practitioner, heir and purchaser in dealing with property passing through an estate.

In this instance, there are several alternatives to consider. KRS 413.010 provides a fifteen year statute of limitations for "an action for the recovery of real property." KRS 413.120(2) provides a five year statute of limitations for "an action upon a liability created by statute, when no other time is fixed by the statute creating the liability." KRS 413.120(7) provides the same five years for "an action for injury to the rights of the plaintiff, not arising on contract and not otherwise enumerated." Lastly, KRS 413.160 provides a ten year limitation period for "an action for relief, not provided for by statute...."

Both the trial court and the Court of Appeals, whose decisions are not criticized due to the legislative void within which they were required to act, applied a 15 year statute on the real property and a 5 year statute on the personal property, both commencing to run at the time of administration. Since an heir is immediately vested in the real estate upon the death of the decedent, it is our determination that there is no statute of limitations *per se* with respect to that heir's claim since the property is *already* his. KRS 413.010 applies to the "recovery" of real property. In order to recover something, there must first be a taking away, or in real estate terms, an "ouster." The concept of "ouster" arises from the legal principle of adverse possession and it is this analysis which must be applied to coinheritors from an intestate decedent. As stated in *Hannah v. Littrell,* 304 Ky. 304, 200 S.W.2d 729 (1947), quoting from an earlier decision:

> "'In order that one of several cotenants may acquire title by adverse possession as against the others, his possession must be of such an actual, open, notorious, exclusive and hostile character as amounts to an ouster of the other tenants'," 200 S.W.2d at 729.

In *Moore v. Terry,* 293 Ky. 727, 170 S.W.2d 29 (1943) property was jointly held by the intestate's children and her spouse on his curtesy claim. The spouse, in a subsequent suit by the children, claimed he had adversely held the property since the date of death, a period of twenty plus years. The Court held against him, stating "where property is jointly occupied, the possession of neither occupant can be deemed adverse

to the rights of the other," 170 S.W.2d at 31. There must be an ouster for one joint tenant to gain title against his cotenants by adverse possession.

■ These principles were again addressed in *Moore v. Gaines*, 308 Ky. 223, 213 S.W.2d 990 (1948). In that case, a granddaughter of the intestate claimed her share in certain real estate against the widow of one of the children of the intestate. The widow claimed full entitlement by adverse possession.[4] The widow had paid taxes, insurance and the like and had performed all repairs on the property. While these acts might signify ownership to third parties, the Court held they were not sufficiently hostile to oust the joint tenant.[5] Once an ouster has occurred sufficient to put an owner on notice that his possessory rights to real estate have been challenged, such as a sale by the other joint tenants to a third party who then takes possession, *Rose et al. v. Ware, et al.*, 115 Ky. 420, 74 S.W. 188 (1903), that owner has a maximum of fifteen years within which to file suit for the recovery of his real estate interest, see *Wilcox, et al. v. Sams, et al.*, 213 Ky. 696, 281 S.W. 832 (1926).[6] Since the original *right* to the real estate descends to the heir by virtue of KRS 391.010, the only limitations requirement on an omitted heir is to file suit for the recovery of the intestate's real property within fifteen years after there has been an ouster.

■ The personal property presents different issues. It does not vest in the descendants as a matter of law. Accordingly,

any heir claiming an interest in the personal property must take timely action following the death of the decedent to enforce his or her claims to the personal property. In surveying the alternatives, we have determined that the ten year period of KRS 413.160 is the most appropriate limitations period. Wood's claim for relief is one "not provided for by statute." Indeed, the laws of descent and distribution in this Commonwealth make no explicit provision for the manner in which one claiming to be an heir is to enforce that right. KRS 413.120(2) does not apply by its literal language. This claim is not one premised upon a "liability created by statute;" this claim is one based upon *rights* created by the intestacy statutes. KRS 413.120(7) could also be found to be applicable. However, since it provides a relatively short period, and since the use of the word "injury" in that subsection could lead to a conclusion (which we do not adopt) that the administrator rather than the heirs and distributees ought be the *only* party sued, we determine that statute not to apply here[7]. Hence, we conclude that any heir claiming an interest in the personal property of a decedent must assert a claim to enforce those rights within ten years following the death of the decedent, KRS 413.160.

■ This brings us to the issues raised on Wingfield's appeal which, by and large, contest the jury's verdict that Wood was a child of Columbus Johnson, Jr. Wingfield first claims that the circuit court did not have jurisdiction to hear this matter since

---

4. It should be noted that the action was commenced by the widow to quiet title, some twenty years after the date of death. There was apparently never an affidavit of descent filed (213 S.W.2d at p. 994). While the defense of laches was discussed, no claim was ever raised of the statute of limitations.

5. The concept of actual versus constructive notice was addressed in *Moore v. Gaines,* as it is in other authorities. That issue is not discussed herein since it is not presented under these facts.

6. However, this case presents no issue of disability. In a proper case, KRS 413.020 et seq. would have to be considered.

7. It is not argued by either party that Wood asserted a claim against the administrator for his failure to properly administer the estate, whether through fraud, mistake or lack of knowledge. Various cases in the Commonwealth have addressed claims of neglect by the administrator or claims against sureties for misfeasance. See, for example, *Hargis v. Sewell's Adm'r*, 87 Ky. 63, 7 S.W. 557 (1888), *Commonwealth v. Sammons*, 180 Ky. 403, 202 S.W. 885 (1918) and *Tucker v. Aetna Casualty & Surety*, 270 Ky. 723, 110 S.W.2d 649 (1937). We do not decide the appropriate limitations period for a claim against the administrator by an omitted heir for acts or failures to act. We deal here with the claim of an heir who is attempting to enforce his or her rights under intestacy.

exclusive jurisdiction for determination of paternity rests in the district court, citing KRS 406.051. As we have said in *Ellis v. Ellis, supra,* and we here say again, this is *not* a paternity action. The purpose of a paternity action is to establish the duty of support during a child's minority; it is *not* the vehicle by which heirs must establish or enforce their rights to intestacy, *Ellis v. Ellis, supra,* and *Sweat v. Turner,* Ky., 547 S.W.2d 435 (1977). While paternity *may* be established by a paternity action during a child's minority, paternity can also be established by a declaratory judgment action before or after the death of the putative father, an action to settle the estate, an action to quiet title, or by an action (such as this) for allowance of the intestacy share as a necessary condition of which the fact that the plaintiff is a child of the decedent must be established.[8]

 Wingfield makes several complaints concerning the trial court's subject matter jurisdiction and/or failure to dismiss Wingfield as an administrator and/or the failure to appoint a successor administrator. First, it is beyond dispute that the circuit court had subject matter jurisdiction to hear Wood's claim for relief, KRS 23A.010[9]. The rightful heirs and those parties claiming an interest are necessary parties for a claim to the intestate's real estate; since the trial court concluded that Wood's claim as to the personalty was time-barred, a result we have reversed, it made no ruling on Wingfield's claims in this regard. We cannot say upon this record whether Wingfield should or should not have been named in his capacity of former administrator. Suffice to say that Wingfield's presence in that capacity may

have been necessary so that full relief could be accorded to the parties by the trial court after return of the jury's verdict. Since the trial court has yet to fashion that relief, it would be premature for us to comment upon this point further. In any event, the presence of Wingfield at trial both individually and as administrator could hardly have been of sufficient confusion to the jury, if any it was at all, to result in prejudice justifying reversal of this judgment. Last, a successor administrator did not need to be appointed for the issue of parenthood to be determined; whether one is required for complete relief remains to be determined and can be first left to the trial court.

 Wingfield also complains that certain of the defendants were non-residents of the state of Kentucky and were only constructively served. The Court of Appeals correctly concluded that the trial court nevertheless had *in rem* jurisdiction to enter final and binding orders with respect to the real property which was the subject matter of the litigation, *Birch v. Birch,* Ky., 239 S.W.2d 483 (1951).

 The extent of the relief which can be granted against the non-resident heirs with respect to a money judgment or the personalty is a different matter. In urging this Court that similar *in rem* jurisdiction exists with respect to the personal property, Wood relies upon *Minary v. Minary,* Ky., 395 S.W.2d 588 (1965). *Minary* deals with constructive service and *in rem* jurisdiction with respect to a trust corpus in the court's jurisdiction. Here there is as of yet no showing that the personalty still exists,

---

8. We are not unmindful of KRS 395.510 et seq. Those statutory provisions allow the bringing of actions in the circuit court for settlement of an estate. The statutory scheme of KRS 395.510 et seq. requires that the estate be in administration. It is possible, and indeed was the case herein, that the administration might never be sought or that it might already have been concluded. While that method of determining the issue is available to persons claiming to be heirs, as is an action for declaratory judgment as utilized in *Ellis v. Ellis, supra,* or the simple filing of a petition seeking to enforce statutory rights as was done by Wood in this case, we

address here the overall limitations period within which a person claiming to be an heir *must* file his or her claim.

9. KRS 23A.010 gives the circuit courts original jurisdiction of all justiciable issues "not exclusively vested in some other court." KRS 24A.120 gives the district courts exclusive jurisdiction in "matters involving probate, except matters contested in an adversary proceeding," KRS 24A.120(2). This is clearly an adversary proceeding, and as such is required to be filed in the circuit court "in accordance with the Kentucky Rules of Civil Procedure," *id.*

nor is there any showing that a res is within the reach of the trial court. Since the trial court concluded that Wood's claim to the personalty was barred by the statute of limitations, the trial court has not reached these questions. We remand this matter to the trial court for its further consideration of these issues.

■■■ Wingfield claims that Wood should be barred by the doctrine of laches and estoppel. Estoppel does not appear to be appropriate on these facts. No facts were proven below to indicate the propriety of the defense of laches, nor does it appear that the jury or the trial court were specifically asked to resolve any factual disputes in this regard. Absent the appropriate showing of prejudice, disadvantage, injury or change of position, laches presents no bar to enforcement of Wood's rights, *Wigginton v. Commonwealth ex rel. Caldwell*, Ky.App., 760 S.W.2d 885 (1988). Wingfield complains of several other trial errors, which were either insufficient to justify reversal of the verdict or which were not properly preserved for review.

The decision of the Court of Appeals is affirmed with respect to the jury's verdict determining Edith Wood to be an heir of Columbus Johnson, and with respect to Wood's claim to the realty of the decedent. The decision of the Court of Appeals is reversed and the order of the trial court barring Wood's claim to the personalty property is vacated, and remanded to the circuit court for further proceedings consistent with this Opinion.

STEPHENS, C.J., and LAMBERT, REYNOLDS and SPAIN, JJ., concur.

COMBS, J., concurs in part/dissents in part by separate opinion.

LEIBSON, J., not sitting.

WINTERSHEIMER, J., concurs in result only.

COMBS, Justice, concurring in part/dissenting in part.

I concur with the majority opinion save in one particular. I respectfully disagree with the conclusion that there were no pre-served trial errors necessitating reversal of the verdict. There was in this case a fundamental question of fact: Is Edith Wood a child of Columbus Johnson, Jr.? At trial, Wingfield moved to require blood testing in order to obtain evidence relevant to this issue. The court denied the motion, committing, in my view, reversible error.

At no time during the life of Columbus Johnson did Ms. Wood or her mother make any claim of paternity by filing an action under KRS 406.051 or otherwise. Had this issue been raised during Johnson's lifetime, the matter could have been resolved without difficulty. Wood's prolonged delay, bringing this action only after Johnson's death, creates the problem at hand. Now, with no blood sample available from Johnson, the more sophisticated HLA test cannot be performed. However, at argument it was represented by Wingfield's counsel that the blood *type* of Columbus Johnson *is* documented and available for comparison. Typing of Ms. Wood and her mother might have excluded Johnson as the father.

As said by this Court in *Perry v. Commonwealth*, Ky., 652 S.W.2d 655 (1983), "blood tests are the most reliable source for the truth in paternity cases." The probative value of blood tests in cases of this nature was also recognized by the U.S. Supreme Court in *Little v. Streater*, 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981). Saying that "this is not a paternity action" cannot blunt the reality of paternity as a threshold issue, or the materiality of blood testing as a reliable aid in its resolution.

The question was preserved for review. It was presented by motion. It was reargued in motions for new trial, to alter or amend the judgment, and for judgment notwithstanding the verdict. It was also briefed by both appellants and appellees.

I would reverse on the issue of consanguinity, and remand for a new trial wherein blood test evidence might be obtained and admitted.